**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DEREK ZAR,

     Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

MICHAEL JACOBY,

     Defendant - Appellant.

_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

SUSANNE ZAR, a/k/a Susanne Hames,

     Defendant - Appellant.

No. 13-1111

No. 13-1119

No. 13-1302

_____

**Appeals from the United States District Court**
**for the District of Colorado**
**(D.C. Nos. 1:10-CR-00502-KHV-2**
**1:10-CR-00502-KHV-1**
**1:10-CR-00502-KHV-3)**
_____

Ann Marie Taliaferro, Brown, Bradsha & Moffat, L.L.P., Salt Lake City, Utah, for Defendant-Appellant Derek Zar.

Richard A. Hostetler, Law Firm of Richard A. Hostetler, Denver, Colorado, for Defendant-Appellant Michael Jacoby.

Jonathan D. Reppucci, Reppucci Law Firm, P.C., Denver, Colorado, for Defendant-Appellant Susanne Zar.

J. Bishop Grewell, Assistant United States Attorney (John F. Walsh, United States Attorney, with him on the brief) Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **HARTZ**, **MATHESON**, and **MORITZ**, Circuit Judges.
_____

**MORITZ**, Circuit Judge.
_____

Defendants Michael Jacoby, Derek Zar, and Susanne Zar appeal convictions and sentences arising from their participation in a mortgage fraud scheme. The government tried the defendants together, but each defendant separately appealed and filed separate briefs. Because the defendants assert both joint and individual challenges to their convictions and sentences, we permitted the government to file a single consolidated answer brief and heard combined oral argument. We now resolve these three related appeals in a single opinion. Exercising jurisdiction under 28

U.S.C. § 1291 and finding no reversible errors, we affirm each defendant's convictions and sentences.

## BACKGROUND

Between January 2005 and September 2006, real estate agent Michael Jacoby devised and executed a mortgage fraud scheme involving the purchase of 18 residential properties in Colorado. Jacoby recruited willing sellers to sell homes at inflated prices, willing buyers to purchase the homes by obtaining mortgage loans based on falsified loan applications, and willing investors to supply short-term loans to cover the buyers' down payments.

Jacoby acted as realtor for each transaction, while Derek Zar and his mother, Susanne Zar (collectively, "the Zars"), were buyers. Derek Zar purchased seven of the properties with fraudulent loan applications and participated in the sales of four other properties either by arranging for the sale of or selling three properties to Susanne Zar and one to another buyer. Susanne Zar purchased six of the properties with fraudulent loan applications and participated in the sales of four other properties by preparing false documents to support Derek Zar's purchases.

For some transactions, Jacoby arranged for sellers to "donate" part of the sales proceeds to grant programs without disclosing to lenders that the "donation" would be funneled back to buyers to repay short-term loans from investors covering the buyers' down payments. In other transactions, Jacoby arranged for back-to-back sales involving the same property. In the first sale, an LLC—usually one formed by the individual who acted as the buyer for the second sale—would purchase a new

3

construction home from the home builder for cash at a discounted sales price. The LLC would then sell the home to the LLC's founder, as an individual buyer, at an artificially inflated price. As part of the second sale, the buyer would obtain a mortgage loan with a fraudulent loan application. The buyer would then use some of the excess loan proceeds to repay investors who contributed cash for the first sale to the LLC. Lenders eventually foreclosed on and sold all 18 homes but experienced collective losses of nearly $3 million.

Additionally, in 2007 Jacoby personally obtained two loans—one from First Bank to purchase a home and another from Citibank to refinance the same home. While securing the two loans, Jacoby made material misrepresentations and omissions by lying about his down payment source and income, failing to disclose that he did not initially purchase the home in an arm's length transaction, artificially inflating the home's sales price, and supplying an artificially inflated appraisal for the refinancing loan.

A federal grand jury indicted Jacoby, Derek Zar and Susanne Zar on charges of wire fraud and aiding and abetting in violation of 18 U.S.C. §§ 1343 and 2 and money laundering in violation of 18 U.S.C. § 1957. Additionally, in connection with his two personal loans in 2007, the grand jury indicted Jacoby on two counts of bank fraud in violation of 18 U.S.C. § 1344.

Following a three-week joint trial, the jury convicted Jacoby of 11 counts of wire fraud, three counts of money laundering, and two counts of bank fraud; Derek Zar of four counts of wire fraud and one count of money laundering; and Susanne Zar

4

of three counts of wire fraud and one count of money laundering. The district court sentenced each defendant to a term of imprisonment followed by a period of supervised release and ordered each defendant to pay restitution.

## DISCUSSION

We first consider challenges by Derek Zar and Susanne Zar to the district court's denial of three pretrial rulings: the Zars' joint motion to sever their trial from Jacoby's and their joint motion to dismiss the indictment, both of which were based on alleged violations of the statutory speedy trial right, and the Zars' joint motion to suppress statements they made to IRS agents. Next, we consider alleged trial errors, including the defendants' joint challenge to a jury instruction and Susanne Zar's individual argument that the district court violated her Sixth Amendment right to confront the witnesses against her, namely Derek Zar. Then, we consider whether to address the defendants' ineffective assistance of counsel claims, which they jointly raise for the first time on appeal. Finally, we turn to the defendants' sentencing challenges.

### I. Pretrial Rulings

### A. Speedy Trial Act (Derek Zar and Susanne Zar)

Both Zars challenge two pretrial rulings: (1) the denial of their motion to sever their trial from Jacoby's trial, and (2) the denial of their motion, jointly filed pro se,

to dismiss the indictment. Both motions alleged violations of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 ("the Act").[1]

Under the Act, federal criminal trials must commence within 70 days of public indictment or the defendant's first appearance, whichever is later. 18 U.S.C. § 3161(c)(1). But certain delays are excludable under 18 U.S.C. § 3161(h). As relevant here, § 3161(h)(1)(D) excludes periods of "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Section 3161(h)(6) excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." And, § 3161(h)(7)(A) excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

If a defendant is not brought to trial within the time limit set by § 3161(c) as extended by § 3161(h), "the information or indictment shall be dismissed on the motion of the defendant." 18 U.S.C. § 3162(a)(2).

Here, all parties agree the Zars' speedy trial clock began to run on October 19, 2010, the date of Derek Zar's initial appearance. The government brought the Zars to trial on August 7, 2012—658 days later. The parties also agree that the 51-day period from October 28, 2010, the date Susanne Zar filed a motion for continuance, through

---

[1] In their joint motion to sever, the Zars also alleged violations of the constitutional right to a speedy trial, but they do not reassert those violations on appeal.

December 17, 2010, the date the court heard the motion, is excludable under

§ 3161(h)(1)(D). But the parties disagree as to the number of remaining days that can

be excluded, and the Zars reassert two alleged speedy trial violations they raised

below in a motion to sever and a subsequent motion to dismiss the indictment.[2] We

address each motion in turn.

### 1.    Motion to Sever

The Zars challenge the excludability of the 130-day delay between March 19,

2012, and July 26, 2012, resulting from the district court's decision, on March 1,

2012, to vacate the March 19, 2012, trial date without setting a new one.[3] Susanne

Zar objected to vacating the trial date and, on March 8, 2012, moved to sever her trial

from Jacoby's. The district court denied the motion on April 25, 2012. The Zars

contend the district court abused its discretion in denying the severance motion

because the 130-day delay violated their statutory speedy trial right.

---

[2] Although not raised in either the Zars' motion to sever or motion to dismiss, the Zars also challenge on appeal the excludability of a second, 112-day continuance that moved the trial date from November 28, 2011, to March 19, 2012. The Zars' failure to challenge this continuance below permits us to consider this challenge waived. *See United States v. Loughrin*, 710 F.3d 1111, 1121 (10th Cir. 2013) (a defendant seeking to challenge on appeal a district court's continuance must do the same in motion to dismiss filed in district court). In any event, the Zars acknowledge the existence of pending motions during all but four days of this period, and the government concedes those four days are nonexcludable. Thus, by our calculation, 108 days of the challenged 112-day period are excludable under § 3161(h)(1)(D) due to pending motions.

[3] The Zars represent this delay as a 140-day delay, framing the time period as March 19, 2012, to August 6, 2012. But the government concedes the 10 days between July 27, 2012, and August 6, 2012, are nonexcludable.

We review the denial of a severance motion based on an alleged speedy trial violation for an abuse of discretion. *United States v. Apperson*, 441 F.3d 1162, 1190 (10th Cir. 2006). But compliance with the Speedy Trial Act's legal requirements is subject to de novo review. *United States v. Banks*, 761 F.3d 1163, 1174-75 (10th Cir.), *cert. denied*, 135 S. Ct. 308 (2014).

Preliminarily, the Zars acknowledge the existence of pending motions between January 23, 2012, and July 26, 2012. As such, we could simply conclude the disputed 130-day time period is excludable under § 3161(h)(1)(D). But because this continuance gave rise to the severance motion the Zars now claim the district court erroneously denied, we choose to address this particular delay in more detail.

During a motions hearing on January 18, 2012, the district court denied Jacoby's motion to sever the trial. At that time, the trial was scheduled to begin on March 19, 2012. In light of the denial of his severance motion, Jacoby orally moved to extend the deadline for expert witness disclosure. The court denied his oral motion but granted Jacoby leave to file a written motion. He did so on January 23, 2012, attaching the disclosure of his newly designated expert witness.

On March 1, 2012, after hearing oral arguments, the district court granted Jacoby's motion to designate the expert witness, reasoning that Jacoby did not act in bad faith in delaying his expert witness identification. The court noted the government intended to designate a rebuttal witness and acknowledged that Jacoby and the government had jointly moved for a hearing on the admissibility of the expert testimony under Federal Rule of Evidence 702. Based on the court's conclusion that

8

it could not conduct that hearing before the March 19, 2012, trial date, the court vacated the trial date without setting a new one.

Susanne Zar objected and moved to sever the trial, arguing the indefinite continuance would "significantly prejudice[] her right to a speedy trial." Second Mot. to Sever, Mar. 8, 2012, Doc. 341, at 6-7. Raising similar arguments, Derek Zar subsequently sought leave to file his own severance motion.

Treating the Zars' motions as a jointly-filed severance motion, the district court denied the motion on April 25, 2012. The court recognized the Zars' substantial statutory right to a speedy trial, but concluded the Zars' "recent decision to invoke those rights is not sufficient to overcome the presumption favoring a joint trial." Order, Apr. 25, 2012, Doc. 365, at 3. Further, in light of its denial of the severance motion, the court held that the Zars remained subject to § 3161(h)(6), which excludes periods of reasonable delay related to continuances requested by joined codefendants. The court deemed "reasonable" the delay occasioned by Jacoby's expert witness designation and the corresponding need for a Rule 702 hearing. In so holding, the court relied on several circumstances: (1) the Zars were both free on bond, (2) neither previously had asserted a speedy trial demand, and (3) the government planned to present one primary body of evidence against the three defendants.

We find no abuse of discretion in the district court's denial of the severance motion. The court recognized the strong presumption favoring trying properly joined defendants together. *See Zafiro v. United States*, 506 U.S. 534, 537-38 (1993) (noting that a defendant seeking severance must show "a serious risk that a joint trial would

9

compromise a specific trial right of one of the defendants"). And, while further recognizing the significance of the Zars' speedy trial rights, the court considered appropriate factors in reaching its conclusion that the Zars failed to overcome that presumption. Consequently, we affirm the district court's denial of the severance motion and conclude the 130 days are excludable both for the reasons stated by the district court and because motions were pending during the entire 130-day period.

### 2. Motion to Dismiss

On October 28, 2010, Susanne Zar sought an 18-month continuance based on the case's complexity. On November 15, 2010, Derek Zar filed a similar motion, incorporating his mother's arguments, but seeking only a 12-month continuance. At the December 17, 2010, hearing, the district court agreed to a continuance and rescheduled the trial for November 28, 2011. In support, the court cited the complexity of the case and the time needed to prepare an adequate defense, concluding the continuance would serve "the ends of justice." *See* 18 U.S.C. § 3161(h)(7)(A) (tolling the speedy trial clock for period of delay resulting from ends-of-justice continuance); *United States v. Margheim*, 770 F.3d 1312, 1318 (10th Cir. 2014) (explaining that "[e]nds-of-justice continuances afford the district court a modicum of flexibility in managing particularly complex or difficult cases"), *cert. denied* 135 S. Ct. 1514 (2015).

On June 12, 2012, after the district court declined to sever their trial from Jacoby's, the Zars filed a joint, pro se motion to dismiss the indictment, alleging the district court erred in granting the 346-day continuance between December 18, 2010,

10

and November 28, 2011. The district court denied the motion and the Zars challenge that ruling on appeal, contending the district court failed to make adequate findings to support the continuance they requested, at least in part.[4]

We review both the denial of a motion to dismiss for Speedy Trial Act violations and the grant of an "ends-of-justice" continuance for an abuse of discretion. However, as noted, we review the district court's compliance with the Act's legal requirements de novo. *Banks*, 761 F.3d at 1174.

Before granting an ends-of-justice continuance, the district court must consider several factors. *See* 18 U.S.C. § 3161(h)(7)(B) (listing factors). Further, the court must make express findings on the record stating its reasons for granting a continuance. *See* 18 U.S.C. § 3161(h)(7)(A); *see also Zedner v. United States*, 547 U.S. 489, 506-07 (2006); *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009). But while "the record must clearly establish the district court considered the proper factors" at the time it granted the continuance, "the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself." *Toombs*, 574 F.3d at 1269 (internal citations and quotation marks omitted); *see United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013) (citing *Toombs*

---

[4] Although both Zars requested a continuance, they are not precluded from challenging the court's ruling. *See Zedner v. United States*, 547 U.S. 489, 503-06 (2006) (rejecting government's argument that judicial estoppel barred defendant who requested continuance from challenging lack of adequate findings to support continuance); *United States v. Toombs*, 574 F.3d 1262, 1273 (10th Cir. 2009) ("[D]efense responsibility for continuances does not unwind Speedy Trial Act violations.").

and noting courts can look to oral and written statements of the district court and moving party to determine whether record supports an ends-of-justice continuance).

At the motions hearing, Susanne Zar's counsel requested an additional 18 months for trial preparation based on the duration of fraudulent activities, the duration of the government's investigation (five years), the nature of the prosecution, and the volume of discovery documents (over 30,000). Derek Zar's counsel also sought a continuance, but asserted he could prepare in 12 months. After considering these arguments, the court granted an approximate 12-month continuance, stating,

> So I think this case is complex in that it involves at least 29 transactions, maybe more transactions. It has four defendants. These transactions may be structured in an elaborate fashion, and I appreciate the need of counsel to prepare an adequate defense. Therefore, I technically am going to find that the case is complex under 18 U.S.C. Section 3161(h)(7)(B)(ii), but I also am going to find that additional time beyond the calculation for speedy trial is necessary for the defendants to adequately prepare a defense in deference to due diligence pursuant to Section 3161(h)(7)(B)(iv).
> I find that the ends of justice are served by a continuance of this trial. I do not believe it requires 18 months' worth of preparation, and we all will have the pleasure of spending next December together. So we will set the trial for November 28th, 2011, 1:00 p.m.

Hr'g Tr., Dec. 17, 2010, Doc. 163, at 11-12.

Contrary to the Zars' contention, this record consists of more than "short, conclusory statements lacking in detail." *See Toombs*, 574 F.3d at 1271 (noting record must contain explanation of reasons supporting continuance and "short, conclusory statements lacking in detail" are insufficient). Further, given the Zars' detailed motions and arguments, the court was not required to restate the "facts which

12

[were] obvious" from those motions and arguments. *See Loughrin*, 710 F.3d at 1119; *Toombs*, 574 F.3d at 1269, 1271.

Consequently, we conclude the district court did not abuse its discretion in granting the first continuance, and that this 346-day delay is excludable under § 3161(h)(7)(A). And, because the Zars objected only to this continuance in their motion to dismiss the indictment, we further conclude the district court did not abuse its discretion in denying the Zars' motion to dismiss the indictment.

### 3. Conclusion

To summarize, the speedy trial clock ran for eight days before Susanne Zar filed her first motion to continue the trial on October 28, 2010. That motion remained pending until December 17, 2010, rendering 51 days excludable under § 3161(h)(1)(D). Because the first ends-of-justice continuance is adequately supported by the record, the 346-day period from December 18, 2010, through November 28, 2011, is excludable under § 3161(h)(7)(A). The 51-day period between November 29, 2011, and January 18, 2012, is excludable under § 3161(h)(1)(D) due to pending motions. But the speedy trial clock ran for four days from January 19, 2012, through January 22, 2012, a period when no motions were pending, thus ticking off a total of 12 days. Motions were pending or under advisement during the 186-day period from January 23, 2012, through July 26, 2012, rendering that time excludable under § 3161(h)(1)(D) and § 3161(h)(1)(H). Finally, the government concedes that the speedy trial clock ran for 10 days between July 27, 2012, and August 6, 2012, before the trial began on August 7, 2012. Thus, the government

13

correctly argues that only 23 days ticked off the speedy trial clock before the Zars were tried. Because the government brought the Zars to trial in compliance with the Speedy Trial Act, the district court did not abuse its discretion in denying the Zars' severance motion or their motion to dismiss the indictment.

### B.  Motion to Suppress (Susanne Zar)

Before trial, the Zars jointly moved to suppress statements they made to IRS agents Mike Garvey and Beverly Hood during an in-home interview. Following a hearing, the district court concluded the interview was not a custodial interrogation and denied the suppression motion. Only Susanne Zar appeals that denial, challenging two of the district court's factual findings and its ultimate conclusion that the in-home interview was not a custodial interrogation.

When considering a district court's suppression ruling, we review the court's factual findings for clear error, viewing the evidence in the light most favorable to the prosecution, and its legal conclusions de novo. *United States v. Garcia*, 751 F.3d 1139, 1142 (10th Cir. 2014); *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007). Clear-error review "ask[s] whether, on the entire evidence, [the appellate court] is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks omitted).

### 1.  Relevant Law and the District Court's Ruling

Statements obtained during a custodial interrogation cannot be used against a defendant unless the government demonstrates the defendant was properly informed

14

of her rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *See United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008).

A person is in custody when her "freedom of action is curtailed to a 'degree associated with formal arrest.'" *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). Courts consider several factors to determine whether, under the totality of the circumstances, a reasonable person would have understood her situation as one akin to formal arrest. *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). Those factors include (1) whether the suspect was aware that she could refrain from answering questions or end the interview at will, (2) whether the questioning was prolonged and accusatory, and (3) whether the questioning took place in a police-dominated atmosphere. *Id*. at 1240.

Following a hearing, the district court denied the Zars' suppression motion, concluding the Zars were not subject to a custodial interrogation. The court reasoned,

> There are two aspects—well, actually three aspects that are troublesome. The first is that the questioning went on for a period of three hours. The second is that the agents failed to advise that this was a consensual conversation. And the third is that the agents failed at any point to advise the interviewees that they had a right to seek counsel.
>
> None of these factors are dispositive, and they are outweighed, in my view, by all of the other aspects of the interrogation which reflect a consensual conversation:
>
> The agents approached the house, requested an opportunity to enter. When [Derek] Zar answered the door, he was advised of their credentials and their purpose of being there. He closed the door. At that point, he knew he did not have to talk to them. When he reopened the door, he chose to talk to them.
>
> And although I would agree with some courts that have observed the failure to reaffirm that this was a consensual conversation is probably not

good practice on the part of the investigating agents, it doesn't change the fact that Mr. Zar invited them into the house after he had previously closed the door to evaluate the situation.

One of the implications that's been raised in the questioning is that the Zars were unacquainted or uninformed or ill-equipped to deal with two law enforcement officers. There is no evidence to support that.

The inquiry with regard to Mr. Zar and his formal education reveals that the agent knew that he had not completed high school and, although he was 28 years old, he did not have a GED. Any concerns about that, however, I believe are relieved by the fact that his mother was present during the entirety of the interview, and there has been no information as to her inability to perceive or be familiar with what was going on during the interview.

Applying the objective standard, taking into account the totality of the circumstances, I find that a reasonable person would have felt that he or she was at liberty to terminate the interrogation and to ask the agents to leave.

Hr'g Tr., Oct. 18, 2011, Doc. 279, at 64-66.

### 2. Analysis

Susanne Zar challenges two of the district court's factual findings as clearly erroneous. First, she argues the district court's finding that Derek Zar "knew he did not have to talk to" agents before he reopened the door is not supported by Agent Garvey's testimony which provided, in relevant part,

We knocked on the door. Derek Zar answered the door. I identified myself as a special agent with IRS and showed him my credentials. Agent Hood also showed Derek Zar her credentials.

I told him I wanted to ask him some questions about the homes that he purchased with Mike Jacoby.

He said to give him a minute, and he closed the door.

A few minutes later, he opened the door and let us in.

Hr'g Tr., Oct. 18, 2011, Doc. 279, at 10.

Garvey later testified he never directly informed either Derek Zar or Susanne Zar that they could refuse to talk to the agents or otherwise terminate the

16

conversation. But Susanne Zar's contention that Garvey's testimony does not support the district court's finding overlooks the district court's ability to make reasonable inferences from the evidence. *See United States v. Mabry*, 728 F.3d 1163, 1166 (10th Cir. 2013) ("'The credibility of witnesses, the weight to be given to evidence, and the reasonable inferences drawn from the evidence fall within the province of the district court.'" (quoting *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004))). Because the district court's finding that Derek Zar knew he did not have to talk to the agents can reasonably be inferred from Garvey's testimony, we conclude that finding is not clearly erroneous.

Moreover, even if not supported by the evidence, the district court's finding that Derek Zar knew he could refuse to talk to agents was not material to its decision. Subjective knowledge is both generally irrelevant and specifically irrelevant to the question now before us—whether a reasonable person in Susanne Zar's position would have understood her situation to be akin to a formal arrest. *See United States v. Little*, 18 F.3d 1499, 1505 (10th Cir. 1994) (en banc) ("[T]he particular personal traits or subjective state of mind of the defendant are irrelevant to the objective 'reasonable person' test . . . 'other than to the extent that they may have been known to the officer and influenced his conduct.'" (citations omitted)).

Next, Susanne Zar argues the district court clearly erred in finding that, "[a]t the Zars' invitation, they sat at the kitchen table and they conversed for a period of three hours." She points to the lack of any evidence that she invited the agents into her home or to her kitchen table, or that she consented to the three-hour interrogation.

17

It is true that Garvey did not directly testify that either of the Zars invited him to the kitchen table. Instead, he testified that after Derek Zar invited him inside, he saw Susanne Zar "near the staircase," that he and another agent introduced themselves to her, and they "proceeded over to the kitchen table." Initially, we don't read the district court's finding as indicating that Susanne Zar personally invited the agents to talk for three hours, only that she implicitly invited them to sit at the kitchen table where they conversed for three hours. Regardless, because either interpretation of the district court's finding can be inferred from Garvey's testimony, that finding is not clearly erroneous.

### 3.    Conclusion

Like the district court, we are troubled by the agents' failure to advise the Zars that the interview was a consensual conversation. But the agents were not required to do so, and as the district court noted, this factor alone did not transform the in-home interview into a custodial interrogation. Rather, as the district court concluded, under the totality of the circumstances the Zars were not in custody during the interview. Consequently, we affirm the district court's denial of the suppression motion.

## II.    Alleged Trial Errors

### A.    Instruction No. 17 (Derek Zar, Susanne Zar, and Jacoby)

All three defendants jointly challenge Instruction No. 17—the elements instruction for the wire fraud counts—on two grounds. First, they argue the instruction omitted an essential element of wire fraud—the scheme to defraud. Second, they contend that omitting that element and adding the phrase "or joined a

18

scheme" constructively amended the charges to broaden the basis for conviction beyond the statute and the indictment.

### 1.    Additional Relevant Facts

The superseding indictment charged the defendants, collectively, with 11 counts of wire fraud, in violation of 18 U.S.C. § 1343, which provides, in relevant part,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, **or** for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

(Emphasis added).

The superseding indictment varied slightly from the statute, conjunctively alleging the defendants "knowingly devised and intended to devise a scheme to defraud . . . **and** to obtain moneys, funds, and other property . . . by means of materially false and fraudulent pretenses and representations." Indictment, Doc. 167, at 1 (emphasis added). But consistent with the statute, the government, Jacoby, and Derek Zar each submitted proposed instructions disjunctively describing § 1343 as "mak[ing] it a crime to use interstate wire communication facilities in carrying out a scheme to defraud **or** to obtain money by means of false or fraudulent pretenses, representations or promises." *E.g.*, D. Zar Proposed Instruction, Doc. 510, at 2 (emphasis added). Additionally, Jacoby and Derek Zar each proposed giving a unanimity instruction.

19

During the instruction conference, the district court questioned the parties as to whether a scheme to defraud differs from a scheme to obtain money or property by means of false or fraudulent pretenses and whether the jury should be given a unanimity instruction. After discussion, the government eventually elected to instruct the jury only on the theory that the defendants devised a scheme "to obtain money or property by means of false or fraudulent pretenses, representations, or promises." Trial Tr., Aug. 28, 2012, Doc. 704, at 3089. Based on this election, the district court eliminated the words "defraud or" throughout the instruction. *Id.* at 3089-90.

Derek Zar objected, arguing the scheme to defraud is an element of both the indictment and the statute and that he had reasonably relied on the government's pursuit of that element at trial. He further argued that striking the phrase "defraud or" from the instruction misstated the law. Susanne Zar and Jacoby joined this objection and further objected to including the phrase "or joined a scheme," contending the phrase conflicted with the wire fraud statute and pattern instruction. But the court overruled the defendants' objections and Instruction No. 17 ultimately read in relevant part,

> Section 1343 of Title 18, United States Code makes it a crime to use interstate wire communications facilities to execute a scheme to obtain money by means of false or fraudulent pretenses, representations or promises. To carry its burden of proof on these charges, as to each defendant, the government must prove the following elements beyond a reasonable doubt:
> FIRST: Defendant devised, intended to devise, or joined a scheme to obtain money or property by means of false or fraudulent pretenses, representations or promises as described in the indictment;

20

SECOND: Defendant did so knowingly and with specific intent to obtain money by means of false or fraudulent pretenses, representations or promises;

THIRD: Defendant used or caused another person to use interstate wire communications facilities for the purpose of carrying out the scheme; and

FOURTH: The scheme employed false or fraudulent pretenses, representations or promises that were material.

Jury Instruction, Doc. 520-2.

## 2. Omission of an Essential Element of Wire Fraud

In any prosecution for wire fraud, the government must establish three elements beyond a reasonable doubt: "(1) a scheme to defraud; (2) an interstate wire communication; and (3) a purpose to use the wire communication to execute the scheme." *United States v. Wittig*, 575 F.3d 1085, 1093 (10th Cir. 2009) (internal quotation marks and citations omitted).

We review de novo whether the jury instructions, as a whole, accurately informed the jury of the governing law. *United States v. Sharp*, 749 F.3d 1267, 1280 (10th Cir. 2014). An instruction that erroneously omits an element of the offense is subject to review for harmless error. *Neder v. United States*, 527 U.S. 1, 12-13 (1999).

The defendants argue that by removing the phrase "defraud or" from the instruction, the district court effectively removed the first element, "a scheme to defraud," from the jury's consideration. They suggest this error is understandable in light of this court's precedent, but that the error nevertheless requires reversal.

In urging the government to elect whether to instruct the jury to find either (1) a scheme to defraud or (2) a scheme to obtain money by false pretenses, the district

21

court acted consistently with our precedent interpreting § 1343. *See United States v. Cronic*, 900 F.2d 1511, 1513 (10th Cir. 1990) (interpreting mail fraud statute, 18 U.S.C. § 1341, as prohibiting two "overlapping" but separate offenses); *see also United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003) (noting first two elements of wire fraud and mail fraud are identical).

But *Cleveland v. United States*, 531 U.S. 12, 25-26 (2000), effectively overruled *Cronic*. In *Cleveland*, the Supreme Court rejected the government's contention that the mail fraud statute, § 1341, "defines two independent offenses: (1) 'any scheme or artifice to defraud' and (2) 'any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" 531 U.S. at 25 (quoting 18 U.S.C. § 1341, alteration in original). In doing so, the Court clarified that the disjunctive phrases in § 1341 proscribe a single offense and that the second phrase merely describes one type of fraudulent scheme. *Id.* at 26. And, as noted earlier, this court has recognized that the first two elements of the mail fraud statute and the wire fraud statute, §§ 1341 and 1343, are identical. *Welch*, 327 F.3d at 1104. Consequently, *Cleveland*, rather than *Cronic*, informs our analysis of the alleged instruction error.

The parties acknowledge *Cleveland*'s impact but disagree on its application. The government argues the instruction did not omit an essential element because under *Cleveland*, the scheme to obtain money or property by fraudulent pretenses is simply a specific type of scheme to defraud. The defendants' argument lacks clarity but implicitly recognizes that after *Cleveland*, the wire fraud statute's two-clause

22

disjunctive structure creates a single offense. Yet the defendants seemingly argue that *because* the statute defines only one offense, the district court omitted an essential element of that offense—the scheme to defraud—by instructing the jury only on the specific means of committing a scheme to defraud described in the second part of the clause.

We disagree. Since the first element of wire fraud is a scheme to defraud and that element includes a scheme to obtain property by means of false or fraudulent pretenses, representations, or promises, omitting the phrase "defraud or" did not render the instruction constitutionally deficient. If anything, the government's "election" worked to the defendants' favor by requiring the government to prove a particular type of scheme to defraud. Consequently, we conclude Instruction No. 17 did not omit an essential element of wire fraud.

### 3.      Constructive Amendment of the Indictment

Next, the defendants contend Instruction No. 17 constructively amended the superseding indictment and broadened the basis for conviction by omitting the "scheme to defraud" element and by adding the phrase "or joined a scheme."

"'In reviewing a claim of constructive amendment, we consider the jury instructions as a whole, reviewing *de novo* the propriety of any individual jury instruction to which an objection was made at trial.'" *United States v. Bedford*, 536 F.3d 1148, 1157 (10th Cir. 2008) (quoting *United States v. Alexander*, 447 F.3d 1290, 1298 (10th Cir. 2006)).

Jury instructions constructively amend an indictment when they broaden the

23

indictment. *See United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) ("A constructive amendment, which is reversible per se, occurs when the district court's instructions and the proof offered at trial broaden the indictment."). Here, consistent with 18 U.S.C. § 1343, the superseding indictment alleged both a general scheme to defraud and a specific scheme to obtain moneys through false pretenses. Thus, as discussed, omitting the phrase "defraud or" narrowed the indictment and required the government to prove a particular type of scheme to defraud—one committed by means of false pretenses—and did not constructively amend the indictment.

Similarly, including the phrase "or joined a scheme" did not constructively amend the indictment. The indictment alleged in part that the defendants "participated in" various real estate transactions to further the fraudulent scheme. A defendant who knowingly participates in a fraudulent scheme, i.e., joins one, can be convicted of wire fraud. *See United States v. Prows*, 118 F.3d 686, 692 (10th Cir. 1997) ("Under well-established Tenth Circuit precedent a defendant may be convicted under either [the mail or wire fraud] statute if the government shows that the defendant joined a scheme devised by someone else, as long as the defendant possessed the intent to defraud."). Moreover, the indictment charged each defendant with aiding and abetting in conjunction with each wire fraud count, and the district court instructed the jury accordingly.

Because we conclude that the phrase "or joined a scheme" in Instruction No. 17 merely referenced the indictment's allegation that the defendants jointly participated in the mortgage fraud, we hold that including this phrase did not

24

constructively amend the indictment.

### 4. Conclusion

Because Instruction No. 17 included every essential element of wire fraud and modifications to the instruction did not constructively amend the charges against the defendants, we find no instructional error.

### B. *Crawford* Violation (Susanne Zar)

Susanne Zar contends that, in the absence of a contemporaneous limiting instruction, the admission of testimonial statements her non-testifying codefendant Derek Zar made to an IRS agent during the Zars' in-home interview violated her Sixth Amendment right to confrontation as interpreted in *Crawford v. Washington*, 541 U.S. 36 (2004).

Whether the admission of a non-testifying codefendant's statements or confession in a joint trial violated the defendant's Sixth Amendment right to confrontation is ordinarily a legal question subject to de novo review. *United States v. Clark*, 717 F.3d 790, 813 (10th Cir. 2013); *United States v. Sarracino*, 340 F.3d 1148, 1158-59 (10th Cir. 2003). But the parties agree that plain-error review applies here because Susanne Zar neither objected to the admission of Derek Zar's statements nor requested a contemporaneous limiting instruction. *See United States v. Pablo*, 696 F.3d 1280, 1287 (10th Cir. 2012) (explaining that plain error relief is granted only when the defendant establishes an error, that is plain or obvious, that affects substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings).

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant's right to confront the witnesses against her. U.S. Const. amend. VI; *Clark*, 717 F.3d at 813-14. As interpreted in *Crawford*, "the Sixth Amendment preclude[s] the admission of out-of-court statements that are testimonial, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *Clark*, 717 F.3d at 814-15 (internal quotation marks and citations omitted). Statements made during a police interrogation generally are testimonial. *United States v. Shaw*, 758 F.3d 1187, 1195 (10th Cir.), *cert. denied* 135 S. Ct. 503 (2014).

In the context of multi-defendant trials, whether the admission of a non-testifying co-defendant's statements violates the Confrontation Clause depends on the content of the statements and the court's ability to mitigate any prejudicial impact. When the statements of a non-testifying codefendant expressly implicate another codefendant and are so "powerfully incriminating" that a court cannot presume the effectiveness of a limiting instruction advising the jury to consider the statements only in deciding the non-testifying codefendant's guilt, the statements may not be used in the joint trial. *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). But if the non-testifying codefendant's statements implicate another codefendant "only when linked with evidence introduced later at trial," the Confrontation Clause is not violated as long as the court (1) redacts the non-testifying codefendant's confession to eliminate the defendant's name and any reference to her existence, and (2) gives a proper limiting instruction when it admits the confession. *Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987); *see also Spears v. Mullin*, 343 F.3d 1215 (10th Cir. 2003).

26

Here, IRS Agent Beverly Hood testified at trial about several statements Derek Zar made during the Zars' in-home interview. Although Susanne Zar did not object to the statements' admission or request a contemporaneous limiting instruction, the district court gave this limiting instruction at the close of trial: "You have heard evidence that Susanne Zar and Derek Zar gave statements to the authorities. You may consider any such statement in deciding the charges against that defendant, but not against any other defendant. You should give such statements such weight, if any, as you feel they deserve." Trial Tr., Aug. 28, 2012, Doc. 704, at 3110.

On appeal, Susanne Zar acknowledges her son's statements did not directly implicate her. Nevertheless, relying on *Richardson* and *Spears*, she contends his statements implicated her when linked with other evidence presented at trial and that the district court violated her confrontation rights by failing to sua sponte give a limiting instruction.

But even assuming the district court committed an obvious *Crawford* error by admitting Derek Zar's testimonial statements without a contemporaneous limiting instruction, we agree with the government that Susanne Zar cannot establish prejudice under the third prong of the plain-error analysis. *See Pablo*, 696 F.3d at 1293 (noting appellant bears burden to demonstrate "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different" (internal quotation marks and citation omitted)).

Here, the district court admitted independent evidence of Susanne Zar's guilt including Hood's testimony regarding inculpatory statements Susanne Zar made during

27

the Zars' in-home interview as well as documentary evidence, such as bank records, loan applications, and residential sales contracts, supporting those statements. And witnesses other than Derek Zar testified at trial about Susanne Zar's involvement in various real estate transactions arranged by Jacoby. Given this evidence and the district court's instruction at the close of trial advising the jury to consider each defendant's statements individually in determining guilt, we decline to reverse Susanne Zar's convictions under the plain-error standard.[5]

## III.    Ineffective Assistance of Counsel (Derek Zar, Susanne Zar, and Jacoby)

All three defendants jointly assert ineffective assistance of counsel claims for the first time on appeal, collectively arguing their respective attorneys demonstrated prejudicially deficient performance by entering into a poorly-worded stipulation regarding the jurisdictional element of the wire fraud counts.

Generally, ineffective assistance of counsel claims should be raised in collateral proceedings rather than on direct appeal. *See, e.g.*, *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) (instructing that "such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed"). But relying on *United States v. Crowe*, 735 F.3d 1229, 1244 (10th

---

[5] Susanne Zar additionally argues that if we reverse her wire fraud conviction (Count 16), we must also reverse her money laundering conviction (Count 10). Lacking any basis to reverse the wire fraud conviction, we find no basis to reverse the money laundering conviction. Further, the Zars jointly seek reversal and a new trial based on the cumulative and prejudicial effect of the alleged trial errors. *See United States v. Caraway*, 534 F.3d 1290, 1302 (10th Cir. 2008) (discussing cumulative error analysis). But because the only error we have found is an assumed unpreserved *Crawford* error, we reject the Zars' cumulative error claim.

Cir. 2013), defendants argue their claims are fully developed in the record and thus present an exception to this general rule. *See Galloway*, 56 F.3d at 1242 (recognizing that "[s]ome rare claims which are fully developed in the record may be brought either on direct appeal or in collateral proceedings").

As in this case, the defendant in *Crowe* challenged her attorney's decision to enter into a written stipulation on an element of wire fraud. But in contrast to the defendants in this case, the defendant in *Crowe* asserted her ineffective assistance of counsel claim in a motion for new trial and the district court denied the claim on its merits. Thus, unlike the panel in *Crowe*, we lack the benefit of a district court ruling, and we decline to address the defendants' ineffective assistance of counsel claims.

## IV.   Alleged Sentencing Errors

The defendants jointly assert that the district court violated their Fifth and Sixth Amendment rights to a jury trial when it found facts necessary to increase their advisory Guidelines sentencing ranges. The Zars jointly challenge the district court's method of calculating the loss both for Guidelines purposes and for imposing restitution. Susanne Zar individually contends the district court erroneously attributed to her the losses related to three properties, and Derek Zar argues the district court erroneously applied a three-level enhancement based on his aggravating role in the offense and erroneously denied his motion for a downward variance.

Before turning to these specific claims, we briefly summarize the district court's calculation of each defendant's sentence.

29

### A. Additional Relevant Facts

#### 1. Michael Jacoby

In calculating Jacoby's advisory Guidelines range, the presentencing report ("PSR") grouped Jacoby's wire fraud, money laundering, and bank fraud convictions, resulting in a base offense level of 7. *See* U.S.S.G. § 3D1.2(c), (d); § 3D1.3(b). The PSR adopted the government's loss calculation of $3,160,267 and assigned an 18-level increase based on the amount of the loss. *See* U.S.S.G. § 2B1.1(b)(1)(J) (providing 18-level increase if loss is more than $2,500,000 but less than $7,000,000). Jacoby also received a two-level increase based on the number of victims. *See* U.S.S.G. § 2B1.1(b)(2)(A) (providing two-level increase for offenses involving 10 or more but less than 50 victims). Finally, for his role as an "organizer or leader" of the fraudulent scheme, Jacoby received a four-level increase under U.S.S.G. § 3B1.1(a). Jacoby's total offense level of 31 and his criminal history of I resulted in an advisory Guidelines range of 108-135 months' imprisonment for each of his 16 convictions.

The district court sentenced Jacoby to a controlling term of 108 months' imprisonment followed by a five-year term of supervised release and ordered restitution of $2,926,467.

#### 2. Derek Zar

The PSR grouped Derek Zar's four wire fraud convictions and one money laundering conviction producing a base offense level of 7. *See* U.S.S.G. § 3D1.2(c), (d); § 3D1.3(b). After adopting the government's loss calculation of $1,599,359, the

30

PSR applied a 16-level increase for that loss. *See* U.S.S.G. § 2B1.1(b)(1)(I) (providing 16-level increase for loss of more than $1,000,000 but less than $2,500,000). The PSR then applied a three-level increase under U.S.S.G. § 3B1.1(b) for Derek Zar's role in the offense as a "manager or supervisor." His total offense level of 26 and criminal history of I resulted in an advisory Guidelines range of 63-78 months' imprisonment for each of Derek Zar's five convictions.

The district court sentenced Derek Zar to a controlling term of 63 months in prison followed by three years of supervised release and ordered restitution of $1,364,657.

### 3.      Susanne Zar

The PSR grouped Susanne Zar's three wire fraud convictions and one money laundering conviction producing a base offense level of 7. *See* U.S.S.G. § 3D1.2(c), (d); § 3D1.3(b). The PSR then assigned a 16-level increase based on a loss calculation of $1,519,114, *see* U.S.S.G. § 2B1.1(b)(1)(I), and a one-level increase for the money laundering conviction, *see* U.S.S.G. § 2S1.1(b)(2)(A). Susanne Zar's total offense level of 24 and criminal history of I produced an advisory Guidelines range of 51-63 months' imprisonment for each of her four convictions.

At sentencing, the district court found Susanne Zar responsible for less actual loss than indicated in the PSR but enough to warrant the recommended 16-level increase under U.S.S.G. § 2B1.1(b)(1)(I). The court granted a downward variance, imposed a 24-month controlling prison sentence followed by three years of supervised release, and ordered restitution of $1,283,835.

31

**B.** *Apprendi/Alleyne* **Error (Derek Zar, Susanne Zar, and Jacoby)**

The defendants jointly contend the loss amount necessary to support an increase in the base offense level under U.S.S.G. § 2B1.1(b)(1) is an "element" of the offense that must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt to satisfy the Fifth and Sixth Amendments as interpreted in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

The defendants' reliance on *Apprendi* and *Alleyne* is misplaced as none of the defendants were subject to mandatory minimum sentences or sentenced beyond the statutory maximums for their convictions. *See Alleyne*, 133 S. Ct. at 2155, 2160 (holding any fact increasing mandatory minimum sentence is element that must be submitted to jury); *Apprendi*, 530 U.S. at 490 (holding any fact increasing sentence beyond statutory maximum must be submitted to jury). *Cf.* 18 U.S.C. §§ 1957, 1343, 1344 (providing statutory maximum sentences for money laundering, wire fraud and bank fraud of imprisonment of not more than 10 years, 20 years, and 30 years, respectively).

Instead, the judicial fact finding the defendants complain of occurred in the context of determining their applicable sentencing ranges under the advisory sentencing Guidelines. The *Apprendi/Alleyne* rule does not apply in this context. *See United States v. Ray*, 704 F.3d 1307, 1314 (10th Cir.) (noting Supreme Court has definitively rejected *Apprendi*'s application to present advisory-Guidelines regime), *cert. denied*, 133 S. Ct. 2812 (2013); *see also United States v. Cassius*, 777 F.3d

32

1093, 1096-99 (10th Cir. 2015) (explaining that *Alleyne* applies only to judicial findings that alter the applicable *statutory* sentencing range, as opposed to findings that impact the applicable advisory Guidelines range).

### C.    Method of Loss Calculation (Derek Zar and Susanne Zar)

The Zars argue the district court failed to use a reasonable method to calculate the loss amount for purposes of determining their Guidelines sentencing ranges and for purposes of imposing restitution under the Mandatory Victim Restitution Act of 1996, 18 U.S.C. §§ 3663A-3664 ("MVRA").

The Zars concede that in calculating the loss amount for Guidelines purposes the district court followed our precedent in *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011), but they raise the issue to preserve it for further review. Bound by our precedent, we find no error.

Likewise, we find no error in the district court's calculation of loss for purposes of restitution. Citing *United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012), the Zars argue the district court erred as a matter of law by not calculating the restitution offset amount based on the fair market value of the collateral real estate at the date of foreclosure when the victim-lender took title and could have sold it for cash. We easily reject this argument as the Supreme Court has expressly abrogated the *Yeung* methodology. *See Robers v. United States*, 134 S. Ct. 1854, 1856 (2014) (holding that a sentencing court imposing restitution under the MVRA "must reduce the restitution amount by the amount of money the victim received in selling the collateral, not the value of the collateral when the victim received it").

**D. Relevant Conduct (Susanne Zar)**

Susanne Zar individually contends the district court erred by including three properties in its loss calculation—1065 Ridge Oaks, 1490 Rose, and 30848 E. 151st—to determine her Guidelines sentencing range. She acknowledges that these properties were among the 18 properties involved in the mortgage fraud scheme but she maintains the government failed to sufficiently prove that the losses attributable to these three specific properties constituted relevant conduct under U.S.S.G. § 1B1.3 for purposes of calculating her Guidelines sentence.

Preliminarily, the parties disagree on whether Susanne Zar properly preserved this claim. But even if we assume she preserved her objection, we conclude the district court did not clearly err in attributing these losses to her. *See United States v. Sells*, 541 F.3d 1227, 1234 (10th Cir. 2008) (considering Guidelines calculation under § 1B1.3(a)(1)(B) and applying clear error to district court's factual determinations).

Section 1B1.3(a)(1)(B) makes clear that a participant in a fraudulent scheme "undertaken by the defendant in concert with others" must be held responsible for "all reasonably foreseeable acts and omissions in furtherance of the jointly undertaken criminal activity." This is true regardless of a defendant's direct participation in a specific transaction. *Sells*, 541 F.3d at 1234.

As the government notes, the indictment listed the three properties among the 18 properties involved in the mortgage fraud scheme and the evidence at trial demonstrated that losses from these three properties were reasonably foreseeable to

34

Susanne Zar regardless of whether she directly participated in the real estate transactions related to these three specific properties. Thus, we conclude the district court did not clearly err in including the three challenged properties in calculating the loss attributable to Susanne Zar.

### E.  Three-Level "Manager/Supervisor" Enhancement (Derek Zar)

Derek Zar individually argues the district court erroneously increased his base offense level under U.S.S.G. § 3B1.1(b), which calls for a three-level increase "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." Over Derek Zar's objections, the district court found the trial evidence demonstrated that he was a manager or supervisor and agreed with the PSR's recommendation to apply the three-level enhancement.

We review a district court's finding that a defendant is a manager or supervisor under § 3B1.1(b) for clear error. *United States v. James*, 592 F.3d 1109, 1113 (10th Cir. 2010); *see United States v. Cruz Camacho*, 137 F.3d 1220, 1223-24 (10th Cir. 1998) (discussing tension between two lines of this court's precedent regarding appropriate standard of review and concluding clear error review is appropriate). "Under this standard, we will not reverse the district court's finding unless, 'on the entire evidence, we are left with the definite and firm conviction that a mistake has been committed.'" *James*, 592 F.3d at 1113 (quoting *United States v. Wilfong*, 475 F.3d 1214, 1218 (10th Cir. 2007)).

35

### 1. Additional Relevant Facts

The PSR recommended the three-level enhancement citing evidence from the record that Derek Zar "recruited other individuals, including relatives, to participate in the scheme and help[ed] them to participate in the fraudulent home purchases." PSR, Doc. 596, at 42 (sealed). The PSR further indicated, "[b]ased on information obtained from the case agent and review of discovery materials," that Derek Zar "had a managerial role" in the scheme. *Id.* at 43. Finally, the PSR urged application of the enhancement because Derek Zar "recruited others to participate in the fraudulent purchase of multiple homes" and "benefitted from their involvement and directed their activities in order to facilitate completion of the fraudulent transactions." *Id.* at 45.

Derek Zar filed written objections to these portions of the PSR and argued at sentencing that the trial evidence did not support the trial court's finding that he was a manager or supervisor. Specifically, he argued he did not exercise any decision-making authority, recruit any accomplices, claim a larger share of the fruits of the crime, plan or organize the fraudulent scheme, or exert control or authority over others.

In response, the prosecutor reminded the court that two witnesses testified at trial that Derek Zar encouraged them to participate in fraudulent real estate transactions, identified certain properties for them to buy, informed them of the prices for those properties, explained how the grant programs worked, and introduced them to Jacoby, who acted as the realtor for the witnesses' purchases of the

36

properties. The prosecutor also pointed out that the government was seeking a four-level enhancement for Jacoby's aggravating role and argued the three-level increase was proportionately appropriate for Derek Zar's role in the scheme.

After hearing these arguments and the prosecutor's recitation of the trial evidence, the district court overruled the objections, finding Derek Zar's role as a manager or supervisor to be supported by the record and the PSR.

### 2. Analysis

Derek Zar argues the district court failed to make adequate specific factual findings to support its general finding that he was a manager or supervisor. He further argues the trial evidence does not support the court's general finding as to his role in the mortgage fraud scheme.[6]

### a. Adequacy of Findings

Before applying an aggravating-role enhancement under § 3B1.1(b), the district court must make specific factual findings as to the defendant's role in the offense. *United States v. Cordoba*, 71 F.3d 1543, 1547 (10th Cir. 1995); *United States v. Roberts*, 14 F.3d 502, 522 (10th Cir. 1993); *see also* Fed. R. Crim. P. 32(i)(3)(B) (requiring district court to rule on "any disputed portion of the presentence report" before imposing a sentence).

---

[6] Derek Zar also contends the facts supporting the manager/supervisor enhancement must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt to satisfy the Fifth and Sixth Amendments as interpreted in *Alleyne* and *Apprendi*. We reject this argument because, as discussed, the *Apprendi/Alleyne* rule does not apply to calculation of an advisory guidelines sentence. *See Ray*, 704 F.3d at 1314; *see also Cassius*, 777 F.3d at 1096-99.

Relying on these authorities, Derek Zar argues "the district court articulated no specific findings or factual basis" to support the three-level enhancement. D. Zar. Br., at 39. Ordinarily, when a district court fails to make adequate findings or comply with Rule 32, we remand for further findings. *See, e.g.*, *United States v. Peña-Hermosillo*, 522 F.3d 1108, 1113 (10th Cir. 2008); *United States v. Brown*, 164 F.3d 518, 522 (10th Cir. 1998). But Derek Zar does not seek that remedy. Instead, he urges us to review the record and conclude it does not support the enhancement.

We see no need to remand for further findings. The district court satisfied Rule 32 by ruling on Derek Zar's objections to the PSR before imposing sentence. And while the court's specific factual findings are admittedly sparse, the findings are not so deficient as to hinder our review. *See United States v. Gonzalez Edeza*, 359 F.3d 1246, 1249 (10th Cir. 2004) (suggesting remand is appropriate when absence of factual findings hinders review or findings are "so conclusory as to render the enhancement unreviewable"). Significantly, the court ruled on the matter immediately after the prosecutor directed the court's attention to specific portions of the trial record and the court concluded the "record clearly reflect[ed]" Derek Zar's role as a manager or supervisor. The court's reliance on specific portions of the record is sufficient to guide our review and, as discussed next, sufficient to support its application of the three-level enhancement.

### b.    Sufficiency of Evidence

U.S.S.G. § 3B1.1 does not define the terms "manager," "supervisor," "organizer," or "leader." Instead, the Commentary provides several factors to

38

consider in "distinguishing a leadership and organizational role from one of mere management or supervision." U.S.S.G. § 3B1.1, cmt. n.4. Those factors are,

> the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n.4).

Relying on these factors, this court has consistently interpreted the "manager/supervisor" role as one requiring the defendant to exercise some degree of "decision-making authority," "control," or "organizational authority" over a subordinate participant in the offense. *See, e.g.*, *United States v. Beltran*, 571 F.3d 1013, 1020-21 (10th Cir. 2009) (noting that for three-level enhancement to apply "defendant must also exercise some degree of 'decision-making authority or control over a subordinate'"); *Peña-Hermosillo*, 522 F.3d 1108, 1112 (10th Cir. 2008) (same); *Gonzalez Edeza*, 359 F.3d at 1248 (explaining enhancement is appropriate when defendant is "responsible for organizing others for the purpose of carrying out the crime"); *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990) ("In order to be a supervisor, one needs merely to give some form of direction or supervision to someone subordinate in the criminal activity for which the sentence is given.").

Citing several of these cases, Derek Zar argues the trial evidence fails to demonstrate that he "exercise[d] decision-making authority" or otherwise "exerted control and authority" over any subordinates in the mortgage fraud scheme. Rather,

he characterizes himself a lowly buyer in the scheme who, at most, advised other buyers who were essentially his peers.

But the evidence at trial established otherwise. For example, one witness testified that Derek Zar advised her to buy two of the properties listed in the indictment so she could resell one to him and one to Susanne Zar. He also informed her of the price of each property, explained how the real estate transaction would work, including how she would use the grant program to "donate" a portion of her sales proceeds back to Derek Zar, and introduced her to Jacoby, who then acted as the real estate agent for both transactions and provided cashier's checks to cover the down payments for each home. Similarly, a second witness testified that Derek Zar encouraged her to join him in investing in real estate, explained how she could buy homes utilizing the grant programs, and introduced her to Jacoby. The witness purchased six homes with Derek Zar, utilizing the grant programs and Jacoby's real estate services for five of those purchases.

Our independent review of the record establishes that Derek Zar recruited others to participate in the mortgage fraud scheme, advised them as to which homes to buy and sell, directed their utilization of the grant programs, and introduced them to Jacoby so he could act as the real estate agent and, in some cases, provide hard-money loans for down payments. These activities sufficiently demonstrate Derek Zar's role as a manager or supervisor in the mortgage fraud scheme. *See, e.g.*, *Gonzalez Edeza*, 359 F.3d at 1248-49 (affirming three-level enhancement for "manager/supervisor" role on findings that defendant gave instructions to, directed

40

the conduct of, and coordinated another participant's delivery of methamphetamine); *United States v. Pofahl*, 990 F.2d 1456, 1480-81 (5th Cir. 1993) (finding no error in applying § 3B1.1(b) to defendant who negotiated drug prices, recruited other conspirators, and directed other members of conspiracy).

We conclude the district court did not clearly err in finding that Derek Zar was a manager or supervisor and we affirm its application of the three-level enhancement.

### F. Motion for Variance Under 18 U.S.C. § 3553(a) (Derek Zar)

Finally, Derek Zar challenges the district court's denial of his motion for a variance under 18 U.S.C. § 3553(a). "We review sentences for reasonableness under a deferential abuse of discretion standard." *United States v. Haley*, 529 F.3d 1308, 1311 (10th Cir. 2008). Because the district court "sees and hears the evidence, makes credibility determinations, and actually crafts Guidelines sentences day after day" it has a distinct advantage over this court in determining "whether the facts of an individual case justify a variance pursuant to § 3553(a) . . . [and] we generally defer to its decision to grant, or not grant, a variance based upon its balancing of the § 3553(a) factors." *Id.*

At sentencing, Derek Zar asserted several factors supported his variance request. In denying the motion, the district court concluded most of the factors he asserted already had been accounted for in the advisory sentencing Guidelines, that his conduct was planned rather than aberrational, and that while others had recruited him into the fraudulent scheme, they had not done so through coercion or duress. On

appeal, Derek Zar contends the district court abused its discretion by essentially presuming the reasonableness of the advisory Guidelines sentence and failing to adequately consider his reasons for seeking a lower sentence.

We agree with the government that the district court did all it was required to do before imposing a within-Guidelines sentence. *See United States v. Lente*, 647 F.3d 1021, 1034-35 (10th Cir. 2011) (noting that when court imposes within-Guidelines sentence, it need neither explicitly refer to § 3553(a) factors nor respond to every argument for leniency; instead, a general statement of its reasons will suffice). Here, the district court noted the advisory sentencing range of 63-78 months, discussed several § 3553(a) factors, considered Derek Zar's arguments for a variance, and stated its reasons for rejecting those arguments before imposing the low-end prison sentence of 63 months. We find no abuse of discretion under these circumstances.

## CONCLUSION

Finding no reversible trial or sentencing errors as to any defendant, we affirm.