**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Douglas William LITCHFIELD,
Defendant–Appellant.**

**No. 90–8102.**

United States Court of Appeals,
Tenth Circuit.

March 24, 1992.

---

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colo., for defendant–appellant.

John R. Green, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., Gay Woodhouse, Asst. U.S. Atty., and Maynard D. Grant, Sp. Asst. U.S. Atty., with him on the brief), D.Wyo., Cheyenne, Wyo., for plaintiff–appellee.

Before LOGAN and BRORBY, Circuit Judges, and OWEN, District Judge.*

LOGAN, Circuit Judge.

Defendant Douglas Litchfield appeals his conviction and the sentence imposed upon him for conspiracy in violation of 18 U.S.C. § 371, several counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343, a count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314, and aiding and abetting in violation of 18 U.S.C. § 2. These violations were found in connection with an investment scheme in an alleged mining operation that defrauded investors.

Defendant asserts errors in his trial and sentencing as follows: (1) defendant was prejudiced when his appointed counsel breached his ethical duty and had a conflict of interest; (2) admission of certain evidence was erroneous and prejudicial to defendant; (3) the jury instruction explaining reasonable doubt was erroneous and prejudicial; (4) the district court in sentencing defendant improperly found defendant was an organizer or leader meriting a four point increase in offense level; (5) the court erred in giving defendant a two point increase in offense level for obstruction of justice; and (6) the court abused its discretion by sentencing defendant to consecutive, rather than concurrent, prison terms.

## I

Defendant asserts that his trial counsel had a conflict of interest and breached his ethical duty by his ex parte revelations to the district court, requiring reversal of the convictions. This claim stems from a transcribed, ex parte discussion between defendant's trial counsel and the district court judge, which occurred during trial. In the ex parte discussion, initiated at the defense lawyer's request, the lawyer expressed concern to the court about a perceived conflict between his ethical duty to his client and to the court. Counsel explained he had advised defendant that he believed defendant could not prevail without personally testifying. Counsel further explained that defendant wished to testify, largely because of that advice. Counsel was concerned, however, that the testimony he would elicit during his direct examination would include untruths, thus implicating counsel's duty as an officer of the court. The court responded, appropriately we believe, as follows:

> Well, you're not in a position that seems to me to decide—not in the best position, let's put it that way, to decide what is true and not true. Certainly, there may be things that he testifies to that are contradictory. Nor am I in a good position even based upon what I've heard from you because I don't hear a declaration from you that I believe that my client will speak untruthfully or that a fraud will be perpetrated upon the Court, and so I'm not making up my mind or making any decision in that regard and would prefer to let the jury listen to the evidence, weigh it and arrive at its own conclusions.

---

* The Honorable Richard Owen, Senior United States District Judge for the Southern District of New York, sitting by designation.

*Id.* at 6–7. Counsel concluded by explaining:

> it's going to be, as I think you'll see from the cross-examination from start to finish, there are what I consider to be many, many inherent inconsistencies. And I just—I guess I really just want to make it clear to the Court that I do not feel comfortable being part of this, but I feel I have to ask the questions that I have to ask because my client has made the decision to take the stand.

*Id.* at 8.

■■■ A defendant can pursue an ineffective assistance of counsel claim by showing that counsel had an actual conflict of interest. *E.g., Osborn v. Shillinger,* 861 F.2d 612, 626 (10th Cir.1988). Ordinarily, a defendant claiming ineffective assistance of counsel must show prejudice to the defendant, *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); however, if defendant shows that trial counsel actually represented conflicting interests, prejudice is presumed. *Id.* at 692, 104 S.Ct. at 2067; *Nix v. Whiteside,* 475 U.S. 157, 176, 106 S.Ct. 988, 999, 89 L.Ed.2d 123 (1986); *Osborn,* 861 F.2d at 626. "In order to establish an actual conflict, [defendant] must demonstrate 'as a threshold matter ... that the defense attorney was required to make a choice advancing his own interests to the detriment of his client's interests.'" *United States v. Acevedo,* 891 F.2d 607, 610 (7th Cir.1989) (quoting *United States v. Horton,* 845 F.2d 1414, 1419 (7th Cir.1988)) (ellipsis in original).

Defendant alleges a conflict of interest between counsel's duty of loyalty to defendant and counsel's desire to protect his own reputation before the district court. Defendant acknowledges that "[c]ounsel ethically cannot assist his client in presenting what the attorney has reason to believe is false testimony." *United States v. Grayson,* 438 U.S. 41, 54, 98 S.Ct. 2610, 2617, 57 L.Ed.2d 582 (1978). But, defendant argues, "[a]n attorney must clearly know rather than suspect fraud on the court before advising the court." Appellant's Opening Brief at 15.

Our reading of the Rules of Professional Conduct for attorneys, however, convinces us that counsel did not clearly violate his ethical responsibility; counsel merely sought to satisfy both his duty to the court and his duty to defendant. Wyoming Rule of Professional Conduct 3.3, for example, provides that "A lawyer shall not knowingly: ... offer evidence that the lawyer knows to be false.... A lawyer may refuse to offer evidence that the lawyer does not know to be false but reasonably believes is false...." The commentary to Rule 3.3 explains at length that although the rule applies to counsel for criminal defendants, the obligation it imposes in specific circumstances is a matter of debate. *See* Wyo. Rule of Professional Conduct 3.3, comment [7]–[12]. In the instant case, defendant, on advice of counsel, wished to exercise his constitutional right to testify in his own defense. At the same time, counsel had reason to believe, based upon his experience with defendant, that some of the testimony counsel would elicit upon examination of defendant would be false. This situation presented counsel with a difficult dilemma, and we cannot say that his ex parte discussion with the district court was a violation of his ethical duty or evidence of a conflict of interest.

■■■ Defendant asserts that counsel should have withdrawn as counsel rather than make the disclosure to the district court. However, it is unlikely the court would have permitted his withdrawal in the middle of a lengthy trial because of the prejudice to both the defendant and the state. *Cf.* Wyo. Rule of Professional Conduct 3.3, Comment [7]. The court noted that defense counsel had "been devoting virtually all of his time to [defendant] ... and preparing for this litigation and working very diligently." III R. 24. Moreover, defense counsel had "worked very diligently throughout the case to preserve points for appeal on the record." XIII R. 40. We see no actual conflict of interest and no ground for an ineffective assistance of counsel claim.

## II

Defendant also argues reversible error based upon the admission of evidence of a separate, but closely analogous, gold marketing scheme, OREO; evidence that defendant had been cited for failing to acquire certain permits; and evidence of an Indiana cease and desist order. "Determinations of whether to allow the admission of evidence lies within the sound discretion of the trial court and will not be disturbed absent a clear showing of an abuse of discretion." *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir.), *petition for cert. denied,* — U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992).

### A

▉ OREO was a separate gold mining scheme that mirrored WESCON, the scheme at issue in this case. The ore that allegedly existed to provide the gold under the OREO scheme was immediately adjacent to the ore that allegedly existed to support the WESCON scheme, and defendant's participation in OREO was identical with his participation in the WESCON scheme. The WESCON marketing booklet and allegedly false representations in the booklet, which are central to the charges in the instant case, were also used in essentially the same form in the OREO scheme.

Defendant made a motion in limine to exclude all evidence regarding the OREO scheme as irrelevant and potentially prejudicial. The government argued, however, that the evidence was relevant to show lack of mistake or accident on the part of defendant and to establish intent to defraud investors. *See* Fed.R.Evid. 404(b). The district court recognized the potential for jury confusion and prejudice and excluded all OREO evidence except the OREO booklet itself and its representations, and defendant's knowledge of the booklet and its representations. The district court cautioned the jury that OREO was not involved in the case and they should "sort through what [they were] about to hear and decide and listen for those conversations or those things that relate to the WesCon portions of transactions." VIII R.

90. On another occasion, the district court sustained defendant's objection and instructed the jury to disregard a question involving OREO investments.

▉ Evidence of lack of mistake or accident is relevant in proving fraudulent intent, an element of mail and wire fraud. *See, e.g., United States v. Taylor*, 832 F.2d 1187, 1192 (10th Cir.1987) (fraudulent intent is an element of mail fraud); *United States v. Gamble*, 737 F.2d 853, 856 (10th Cir.1984) (specific intent to defraud is an element of mail fraud). It appears from the record as a whole that the prosecution avoided OREO testimony except for the limited and permissible purposes of showing lack of mistake or accident. *See* Fed. R.Evid. 404(b). We do not believe the OREO evidence unduly prejudiced the defendant. *See, e.g., United States v. Primrose*, 718 F.2d 1484, 1492 (10th Cir.1983) (admission of evidence of other bad acts affirmed where proper purpose and limiting instruction given).

### B

▉ Defendant also claims prejudice from testimony by a county employee who made a surprise inspection of defendant's mining operations and testified that defendant had failed to comply with certain state and county permit requirements. The evidence was at least minimally probative as to whether defendant intended to establish a legitimate mining operation and in presenting the reason for the witness' inspection of the premises. The testimony established a foundation enabling the witness to testify to activities he observed on the mining site. Defendant concedes that the portion of the testimony describing the activity at the site was appropriate. The district court did not abuse its discretion in allowing the evidence.

▉ Moreover, the district court specifically instructed the jury that "[t]he defendant in this case is not charged with a violation of any county laws or rules concerning mine permitting, and you mustn't let your determination in this case, which involved allegations of mail and wire fraud

against the defendant, be confused or prejudiced in any way that the county rule may or may not have been violated...." IX R. 81. Additionally, both defendant's counsel and the prosecutor in closing arguments emphasized that defendant was not on trial for failure to comply with permit requirements. Thus, even if admission of the portion of the testimony regarding defendant's failure to comply with local and state permit requirements was erroneous, admission of that evidence, when viewed in context with the court's instruction regarding that evidence, was at most harmless error and not prejudicial. *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence *unless* a substantial right of the party is affected...." (emphasis added)); *Beacham v. Lee–Norse*, 714 F.2d 1010, 1014 (10th Cir.1983) ("[I]f there is error in the admission or exclusion of evidence, we will set aside a jury verdict only if the error prejudicially affects a substantive right of a party."); *United States v. Green*, 786 F.2d 247, 252 (7th Cir.1986) ("Unless the error creates a significant risk of convicting an innocent person, it should be disregarded.").

## C

 Defendant also objects to the admission of testimony regarding an Indiana cease and desist order. Because the objection to the evidence of the cease and desist order is raised for the first time on appeal, we review only for plain error. *See* Fed. R.Evid. 103(a), (d); Fed.R.Crim.P. 52(b); *United States v. Nall*, 949 F.2d 301, 309 (10th Cir.1991). "Plain errors are those which are obvious and substantial, and which when viewed in light of the entire

record seriously affect the fairness, integrity or public reputation of judicial proceedings. Plain error is found 'solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Nall*, 949 F.2d at 309 (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)) (citations omitted).

The order, which we could not find in the record before us, apparently indicates that defendant and his alleged coconspirators had been offering for sale or selling unregistered securities in the State of Indiana and orders them to stop such conduct. The evidence of the cease and desist order did not paint the defendant as prone to break the law; to the contrary, defendant and his alleged coconspirators apparently complied with the Indiana order and took some steps to take care of the problem. The evidence was of some probative value because it put defendant and his alleged coconspirators on notice that their scheme might violate some states' securities laws. We do not find plain error requiring the reversal of a jury verdict.

## III

. Defendant argues that the district court erroneously instructed the jury regarding the government's burden of proof. Defendant did not make a contemporaneous objection to the "reasonable doubt" instruction, and accordingly we review for plain error. *See* Fed.R.Crim.P. 30; Fed. R.Crim.P. 52(b). Defendant argues that the "reasonable doubt" instruction[1] did not adequately explain the standard to the jury, and furthermore, the instruction "impermissibly shifted the burden of proof to

---

1. The "reasonable doubt" instruction stated:

 As I have said many times, the government has the burden of proving the defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that it is only necessary to prove that a fact is more likely true than not true. In criminal cases, the government's proof must be more powerful than that. It must be beyond a reasonable doubt.

 Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defen-

dant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

XI R. 97.

[defendant]." Appellant's Opening Brief at 31.

Our court recently resolved this issue in *United States v. Barrera–Gonzales,* 952 F.2d 1269 (10th Cir.1992). In *Barrera,* we held that giving this particular "reasonable doubt" instruction did not constitute plain error, although we recognized this court's preference for a different instruction employing "hesitate to act" language. *Barrera,* at 1272. In *Barrera* we found significant that "the trial judge used the terms 'reasonable doubt' or 'beyond a reasonable doubt' twelve times during the course of his instructions to the jury," *id.* at 1271, thus diminishing the risk that the jury might have been confused and applied a different standard.

The instant case is controlled by *Barrera;* it involves the same instruction, the same plain error standard, and the same repeated emphasis on the term "reasonable doubt." [2] The district court here also repeatedly emphasized that the government had the burden of proof. XI R. 98, 100–01, 109–110, 119; *see also* XII R. 8 ("the law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence.").

▮ Defendant also complains that the following instruction compounded the error:

There is nothing peculiarly different in the way a jury should consider the evidence in a criminal case from that in which all reasonable persons treat any question depending upon evidence presented to them. You are expected to use your good sense, consider the evidence in the case for only those purposes for which it has been admitted and give it a reasonable and fair construction in the light of your common knowledge of the natural tendencies and inclinations of human beings.

XII R. 8. The government concedes that this instruction has been disapproved by this court, *see United States v. Calabrese,* 645 F.2d 1379, 1388 (10th Cir.), *cert. de-*

nied, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 (1981); *United States v. Pepe,* 501 F.2d 1142, 1144 (10th Cir.1974), and would have been better omitted, but it argues the instruction is not plain error. Once again we disapprove of the instruction but hold that even in tandem with the "reasonable doubt" instruction it did not confuse or dilute the reasonable doubt standard or shift the burden of proof from the government. We note the numerous references in the jury instructions to proof beyond a reasonable doubt and the specific, clear and repeated direction that the government had the burden of proof. *See Calabrese,* 645 F.2d at 1387–88 ("nothing peculiarly different" instruction not reversible error where court repeatedly referred to reasonable doubt standard); *Pepe,* 501 F.2d at 1144 (same); *United States v. Downen,* 496 F.2d 314, 322 (10th Cir.) ("nothing peculiarly different" instruction not reversible error when court repeatedly referred to both reasonable doubt standard and burden of proof upon government), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). Considering the instructions as a whole, we do not find plain error.

## IV

▮ Defendant also objects to the sentence imposed upon him. In sentencing, the district court increased defendant's offense level by four, finding that he was an organizer or leader of criminal activity involving five or more participants. *See* U.S.S.G. § 3B1.1(a). We review this finding under a clearly erroneous standard. *E.g., United States v. Cox,* 934 F.2d 1114, 1126 (10th Cir.1991); *United States v. Williams,* 897 F.2d 1034, 1040 (10th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991); *see also United States v. Roberts,* 898 F.2d 1465, 1469 & n. 3 (10th Cir.1990) (review of evidence supporting finding of organizer or leader is under clearly erroneous standard; review of construction of terms "organizer or leader" is closer to de novo standard).

---

2. In the jury instructions in the instant case, the district court made at least 25 references to the reasonable doubt standard. *See* XI R. 97–99, 101, 103, 105–06, 108–11, 113–15, 117–19; XII R. 8.

To apply the four point increase under U.S.S.G. § 3B1.1(a), defendant must be first found to have been "an organizer or leader" of the scheme to defraud, and second, the scheme must have involved five or more participants or been "otherwise extensive." U.S.S.G. § 3B1.1(a). The district court accepted the presentence report's recommended increase of four points, which the court characterized as "an adjustment for role in the offense under Section 3B1.1 contending that Mr. Litchfield was a significant figure in this." XIII R. 8. Regarding defendant, the district court found:

I think the thing that impresses me and is significant in terms of the evidence that was considered at trial was the participation of the defendant, Mr. Litchfield, in the actual promotion where he actually participated in the meeting with the investors, both potential as well as those who needed romancing, when they came to try to get their money back as well as the appearances that occurred in the video products....

But those videos and the testimony of witnesses who had met with Mr. Litchfield ... indicate that Mr. Litchfield was deeply involved or involved in a significant way not only in the narrow area—I don't really find characterization as narrow to be fair either, because [in] the mining operation and the production of the gold[,] key was Mr. Litchfield. He was the linchpin of that operation, and in effect, the mining operation was the bank because people were buying gold in situ.

And so his reassurance was very key to successfully extracting the money from the potential investors....

XIII R. 11–13. The district court in effect found that defendant was deeply involved in and essential to the success of the fraud and equated that finding with "an organizer or leader."

The commentary to § 3B1.1 suggests appropriate facts to consider in determining whether a defendant is an organizer or leader.

Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3); *see also United States v. Smith*, 951 F.2d 1164, 1170 (10th Cir.1991). Our cases have also held that to find a defendant an organizer or leader under § 3B1.1 there must be elements of control or organization of other people. In *United States v. Reid*, 911 F.2d 1456 (10th Cir.1990), *cert. denied*, ⎯ U.S. ⎯⎯, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991), we stated:

Key determinants of the applicability of § 3B1.1 are control or organization: "the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime. This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates."

*Id.* at 1464 (quoting *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990)); *accord Smith*, at 1170 ("To support enhancement under [§ 3B1.1(a)], the government must show that each member of the organization is answerable to the defendant and is under his continuing control."); *see also United States v. Mares–Molina*, 913 F.2d 770, 773 (9th Cir.1990) ("some degree of control or organizational authority over others is required in order for section 3B1.1 to apply"); *United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990) ("Sentencing Commission intended § 3B1.1 to apply only to situations where the offender organizes or leads criminally responsible individuals.").

 Applying these considerations to the facts and findings of this case, we

cannot uphold the district court's § 3B1.1(a) enhancement. We accept the district court's finding that defendant was essential to the success for the fraudulent scheme and was deeply involved in the gold mining operation; such a finding is relevant, *see* § 3B1.1, comment. (n. 3), but not conclusive. Section 3B1.1(a) is an enhancement for organizers or leaders, not for important or essential figures. A drug courier may be essential to a drug operation but is not thereby an organizer or leader under § 3B1.1(a). Moreover, considering the six possible conspirators in the scheme,[3] the district court acknowledged that coconspirators Gibbs and Hawkins "did put together the promotion" and were probably organizers and leaders of the scheme, XIII R. 11; *see also* I Supp. R. 1–2 (prosecution's version); the presentence report indicates that Cook was central to the fraudulent scheme and may also have been a leader, *see* I Supp. R. 1–3 (prosecution's version); and the district court thought that McKee was "key" to the scheme, XIII R. 11; *see also* I Supp. R. 1, 3–4 (prosecution's version). We do not believe that the guidelines intend to define organizer or leader so broadly that nearly every member of a conspiracy qualifies. Defendant did not organize or initiate the original scheme.[4] Although defendant may have recruited unwitting investors, he did not recruit accomplices. Defendant did not control distribution of the profits; nor does it appear that he took a larger division of the profits. Defendant did not exercise decision making authority over his coconspirators. The prosecution has failed to allege or show that defendant led or controlled any of the members of the conspiracy. *See Smith*, at 1170; *Reid*, 911 F.2d at 1464. Although defendant might be termed an organizer or leader of the mining operation, that operation was not itself criminal activity. The fraudulent marketing scheme and the conspiracy are the relevant criminal activity under U.S.S.G. § 3B1.1(a). We conclude that the four point enhancement under § 3B1.1(a) was improper.

## V

Defendant also complains that a two point enhancement of his offense level for obstruction of justice under U.S.S.G. § 3C1.1 was error. "[T]he district court's application of the Sentencing Guidelines to the facts of a particular case is entitled to due deference and its factual findings will not be reversed unless clearly erroneous." *United States v. Urbanek*, 930 F.2d 1512, 1514 (10th Cir.1991). Our deference to the district court is especially appropriate when the issue concerns questions of a witness' credibility. *See United States v. Beaulieu*, 900 F.2d 1531, 1535 (10th Cir.) (citing 18 U.S.C. § 3742(e)), *cert. denied*, — U.S. —, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990). Accordingly, we review a district court's enhancement for obstruction of justice under § 3C1.1 for clear error only. *United States v. McCann*, 940 F.2d 1352, 1360 (10th Cir.1991). After review of the record, including testimony of defendant and other witnesses, we affirm the district court's determination that defendant obstructed justice by giving false testimony at trial. *See Beaulieu*, 900 F.2d

---

**3.** Defendant also argues that the district court erred by not naming the five or more participants required for the § 3B1.1(a) enhancement. Because of our disposition we need not reach this issue; we note, however, that the evidence supports the finding of at least six participants in the conspiracy: defendant, Gibbs, Prostack, Cook, McKee and Hawkins. *See* I R. tab 1, at 5 (naming all six as coconspirators); *see* XIII R. 11; *see also Reid*, 911 F.2d at 1464 (defendant is counted as participant).

**4.** The presentence report claims defendant did help plan and organize the scheme by submitting substantial information for the offering booklet and video. I Supp. R. 3. However, the government's version of the offense, attached to the presentence report, asserts that Cook "was the primary person responsible for what went into the book," and Cook and Hawkins "used offering books from several other offerings they had been involved in or had in their possession" in preparing the booklet. I Supp. R. 3 (prosecution's version); *see also* V R. 52, 55–57. The record does indicate that defendant, upon request, supplied important information for the booklet. V R. 56–57. Thus, while it appears that defendant provided information for the booklet, it is apparent that Cook and Hawkins were the organizers as far as the booklet was concerned.

at 1535 (evidence at trial contradicting defendant's testimony is a valid basis for affirming obstruction of justice determination).

## VI

█ Finally, we consider whether the trial court abused its discretion in sentencing defendant to consecutive sentences. Defendant was sentenced to sixty months imprisonment followed by a term of supervised release on a conspiracy count that included both pre- and post-sentencing guidelines conduct. Defendant was sentenced to a consecutive twelve month term of imprisonment for a pre-sentencing guidelines mail fraud offense. The government acknowledges that had both sentences been under the guidelines, concurrent sentences probably would have been required. *See* Appellee's Brief at 45 n. 5; 28 U.S.C. 994(a)(1, 2); U.S.S.G. § 3D1.2(b) & comment. (n. 4).

█ We join the other circuits that have faced this issue and hold that sentencing courts may impose consecutive sentences if a defendant is convicted of both a pre-sentencing guidelines offense and a post-sentencing guidelines offense, even if the guidelines, had they applied to both offenses, would have required concurrent sentences. *United States v. Watford*, 894 F.2d 665, 669 (4th Cir.1990) (Wilkins, J.); *United States v. Lincoln*, 925 F.2d 255, 257 (8th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2838, 115 L.Ed.2d 1006 (1991); *United States v. Garcia*, 903 F.2d 1022, 1025 (5th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 364, 112 L.Ed.2d 327 (1990). The district court has "unfettered discretion to impose sentences on pre-guidelines counts consecutively or concurrently. And nothing in the guidelines or the Sentencing Reform Act precludes the court from ordering that a sentence imposed on a pre-guidelines count be served consecutively to a sentence imposed on a guidelines count." *Watford*, 894 F.2d at 669. "Whether to impose a consecutive or concurrent sentence is within the discretion of the trial court, and the

court is directed to take into consideration the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3584(b)." *United States v. Russell*, 905 F.2d 1450, 1457 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990).

When sentencing, the district court obviously was concerned about the extent of the fraud, defendant's key role in the fraud because of his abilities and communication skills, and the probability for repetition of such schemes. These are relevant factors under 18 U.S.C. § 3553(a)(1), (2). We hold that the district court did not abuse its discretion in fashioning what it considered an appropriate sentence by ordering the two sentences be served consecutively.

We affirm defendant's conviction and uphold the court's sentencing decisions except for the four point enhancement for organizer or leader. That error requires a REMAND for resentencing in accordance with this opinion.[5]

---

**5.** Defendant's motion for release on appeal bond or, in the alternative, to expedite a ruling in this case is mooted by the issuance of this opinion.