**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 12, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MARCO ANTONIO CORTES-GOMEZ,

    Defendant - Appellant.

No. 18-3052

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 5:16-CR-40091-DDC-1)**

_____

Ryan A. Ray, Norman Wohlgemuth Chandler Jeter Barnett & Ray, Tulsa, Oklahoma, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Stephen R. McAllister, United States Attorney, with him on the brief), District of Kansas, Topeka, Kansas, for Plaintiff-Appellee.

_____

Before **HARTZ**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

On January 13, 2016, Marco Antonio Cortes-Gomez was indicted with two

codefendants on counts related to a methamphetamine conspiracy ("*Cortes-Gomez I*").

His trial began on November 29, 2016. The interim included two superseding indictments, dismissal of the indictment and the filing of a new one with identical charges ("*Cortes-Gomez II*"), the addition of two codefendants, and various continuances and delays that the district court found to be excluded under the Speedy Trial Act of 1974, 18 U.S.C. § 3161 *et seq*. ("STA"). Ultimately, 329 days passed between Mr. Cortes-Gomez's arraignment and the beginning of his trial.

A jury found Mr. Cortes-Gomez guilty on both counts. He appeals, contending that the delay between his arraignment and trial violated his statutory and constitutional rights to a speedy trial. He also challenges the district court's refusal to provide his requested jury instruction regarding accomplice testimony and its application of two sentencing enhancements. We affirm.

## I.

Only the procedural facts relevant to our analysis are recounted here. Mr. Cortes-Gomez, Ms. Juanita Garcia, and Ms. Brenda Sanders were indicted on January 13, 2016 for their respective involvement in a conspiracy to distribute methamphetamine. Trial was initially set for March 29, 2016, then continued to April 6, then to July 19. Both Ms. Sanders and Ms. Garcia entered guilty pleas, but two additional codefendants were included in the first superseding indictment on March 29: Mr. James Ross and Mr. Robert Worthington. On May 19, Mr. Worthington was the last codefendant arrested and arraigned.

2

On June 21, the district court granted Mr. Worthington an "ends-of-justice" continuance under 18 U.S.C. § 3161(h)(7)(A), setting a new trial date of October 11. The court made written findings to justify this delay, including the need to allow counsel for Mr. Worthington and Mr. Ross adequate time to prepare for trial. The court declined to calculate Mr. Cortes-Gomez's Speedy Trial Act deadline until it ruled on his renewed motion to sever, which it then denied on July 19. At that time, the district court excluded two intervals from Mr. Cortes-Gomez's STA clock which are the subject of this appeal: (1) the time between defendant's arraignment and that of his last codefendant, Mr. Worthington (January 21 to May 19), and (2) the delay stemming from Mr. Worthington's ends-of-justice continuance (July 19 to October 11). Mr. Cortes-Gomez repeatedly and zealously asserted his rights to a speedy trial, including moving for severance from his codefendants on two separate occasions.

Mr. Cortes-Gomez's trial began on November 29 and all four of his former codefendants testified against him. Each co-conspirator testified about entering into plea agreements with the government and/or expecting to benefit by testifying against defendant. Mr. Cortes-Gomez requested a specific jury instruction for evaluating accomplice testimony, but the district court rejected it in favor of this court's pattern instruction.

Mr. Cortes-Gomez was convicted by the jury on both counts. At sentencing, the district court overruled his objections to the two sentencing enhancements applied in the Presentence Investigation Report ("PSR"): a four-point enhancement for being the

3

organizer or leader of the enterprise and a two-point enhancement for engaging in criminal conduct as his livelihood. The PSR determined defendant's enhanced offense level to be 44, with a guideline imprisonment sentence of life. The district court varied below the guideline range to avoid an unwarranted sentencing disparity between defendant and his co-conspirators, sentencing Mr. Cortes-Gomez to concurrent sentences of 240 months imprisonment on Count 1, conspiracy to possess with intent to distribute methamphetamine, and 294 months imprisonment on Count 2, attempted possession with intent to distribute 500 grams or more of methamphetamine.

Mr. Cortes-Gomez raises several issues on appeal, and we address each one in turn.

## II.

## SPEEDY TRIAL

We review the district court's compliance with the legal requirements of the Speedy Trial Act *de novo* and its factual findings for clear error. *United States v. Larson*, 627 F.3d 1198, 1203 (10th Cir. 2010). "When the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing considerations balance should not lightly be disturbed." *United States v. Vogl*, 374 F.3d 976, 982 (10th Cir. 2004) (brackets and citation

omitted).[1]  Likewise, "[w]e review a defendant's claim under the Sixth Amendment's Speedy Trial Clause *de novo*, accepting the district court's factual findings unless they are clearly erroneous."  *United States v. Medina*, 918 F.3d 774, 788 (10th Cir. 2019) (citations omitted).

### A.  Speedy Trial Act

The Speedy Trial Act requires that a defendant be tried within seventy days of the filing of the indictment or the defendant's first appearance, whichever occurs later.  18 U.S.C. § 3161(c)(1).  This seventy-day period is subject to various exclusions of time under 18 U.S.C. § 3161(h).  As relevant here, § 3161(h)(6) (the "codefendant subsection") excludes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  Another provision, § 3161(h)(7) (the "ends-of-justice subsection"), excludes "[a]ny period of delay resulting from a continuance granted by any judge … if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[2]

---

[1] Mr. Cortes-Gomez asserts a different standard of review for district courts' decisions to grant ends-of-justice continuances under § (h)(7), which depends on the nature of what is being reviewed.  Aplt. Br. at 19–20.  Because we conclude that we should evaluate the propriety of the continuance in question under § (h)(6), however, we need not address this proffered standard.

[2] When we issued several of the cases cited herein, including *United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986), and *United States v. Vogl*, 374 F.3d 976 (10th Cir. 2004), the ends-of-justice subsection was set forth in 18 U.S.C. § 3161(h)(8) and the

Mr. Cortes-Gomez challenges the excludability of two delays: (1) the time between Mr. Cortes-Gomez's and his last codefendant's arraignments in *Cortes-Gomez I* (January 21 to May 19), and (2) the delay stemming from his codefendant's ends-of-justice continuance (July 19 to October 11). Because both delays are attributable to codefendants, they are properly analyzed under § 3161(h)(6).[3] *See, e.g.*, *United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015) ("[I]n light of its denial of the severance motion, the court held that the [defendants] remained subject to § 3161(h)(6) . . . ."). The general rule under this provision is that all defendants who are joined for trial fall within the speedy trial computation of the latest codefendant joined. *United States v. Margheim*,

codefendant subsection in § 3161(h)(7). The statute has since been amended and the subsections re-codified in § (h)(7) and § (h)(6) as described above. The language in both provisions remained the same. To avoid confusion, throughout this opinion we consistently refer to the subsections as they are currently numbered, even when discussing cases prior to the statute's amendment.

[3] The district court's order denying Mr. Cortes-Gomez's renewed motion to sever creates some confusion about the provision(s) on which it relied. On appeal, Mr. Cortes-Gomez argues that we should review the delay under the ends-of-justice subsection because that is what the district court expressly invoked. *See, e.g.*, Aplt. Reply Br. at 3–5. However, because our case law is clear that the codefendant subsection is the proper statutory provision under which to consider the application of Mr. Worthington's ends-of-justice delay to Mr. Cortes-Gomez, we will restrict our analysis accordingly. *See, e.g.*, *Theron*, 782 F.2d at 1513 (explaining that time excluded on account of codefendants must be evaluated under the codefendant subsection instead of the ends-of-justice subsection); *United States v. Mobile Materials, Inc.*, 871 F.2d 902, 911 (10th Cir. 1989) *abrogated on other grounds by Bloate v. United States*, 559 U.S. 196 (2010) (reviewing *Theron* and reiterating that the codefendant subsection—not ends-of-justice—was the correct statutory provision to regulate exclusions based on codefendant delay); *see also* *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 88 (1943) ("[I]n reviewing the decision of a lower court, it must be affirmed if the result is correct although the lower court relied upon a wrong ground or gave a wrong reason.") (quotation marks and citation omitted).

770 F.3d 1312, 1318–19 (10th Cir. 2014). "When the delay is reasonable, an exclusion for delay attributable to one defendant is applicable to all co-defendants." *United States v. Thomas*, 749 F.3d 1302, 1308 (10th Cir. 2014) (quotation marks, brackets and citation omitted).

> In determining whether delay attributable to a codefendant is reasonable, a court must examine all relevant circumstances. Our circuit has articulated three factors to guide district courts in this exercise: (1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'

*Margheim*, 770 F.3d at 1319.

"The obvious purpose behind [this] exclusion is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986). There is a "strong presumption favoring trying properly joined defendants together." *Zar*, 790 F.3d at 1043; *see also Zafiro v. United States*, 506 U.S. 534, 537 (1993). "A single trial is ideal when the government plans to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." *Margheim*, 770 F.3d at 1319 (quotation marks and citations omitted); *see also United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990) ("[T]his is such a case [where a single trial is preferred], for the defendants were charged with a single conspiracy."). This inquiry is highly fact-sensitive. *Margheim*, 770 F.3d at 1320.

We are satisfied that the district court properly weighed the relevant factors and

reached the correct results with respect to both exclusions challenged here. The parties

agree that the first two *Margheim* factors favor Mr. Cortes-Gomez; their disagreement

concerns the district court's ultimate weighing of the factors and its exercise of discretion

in deeming the delays reasonable. The district court found the delays reasonable because,

although Mr. Cortes-Gomez was in custody[4] and zealously pursuing a speedy trial, the

facts of this conspiracy would render two separate trials based on the same evidence an

inefficient use of prosecutorial and judicial resources.

A joint trial for a drug conspiracy is the type of efficient use of judicial resources

contemplated by the codefendant subsection, and there was every reason to believe that a

joint trial would be appropriate here. *See id.* at 1321 ("[W]hen feasible, courts prefer

joint conspiracy trials . . . ."). The district court reviewed the government's theory of the

evidence and found that the government planned to recite a single factual history, put on

a single array of evidence, and call a single group of witnesses. Aplt. Supp. App., Vol. II

at 76. This fact-sensitive finding was not clearly in error. The reality that a joint trial did

not take place because Mr. Cortes-Gomez's codefendants eventually entered guilty pleas

does not invalidate the district court's original belief that a joint trial would be

appropriate in this drug conspiracy case. This distinguishes Mr. Cortes-Gomez's

situation from the cases he cites on appeal, in which the district courts had prospective

---

[4] Because the parties agree that the first *Margheim* factor weighs in Mr. Cortes-Gomez's favor, we need not examine how the analysis of Mr. Cortes-Gomez's restricted liberty is impacted by the existence of an ICE detainer which could be exercised against him. *But see United States v. Mayes*, 917 F.2d 457, 460 (10th Cir. 1990) ("One important factor is that they were already incarcerated, so the delay did not affect their liberty.").

notice that joint trials would probably not be practicable. *See, e.g.*, *United States v. Messer*, 197 F.3d 330, 338 (9th Cir. 1999) (concluding preliminary circumstances strongly suggested the codefendant would not be available for trial for a significant length of time, if ever, so delay would not increase the likelihood of joint trial).

The district court properly considered the relevant statutory factors in finding that all codefendant delays were reasonable in the circumstances of this case. We see no reason to disturb the court's judgment balancing the opposing considerations, and we therefore affirm its conclusion that both delays were reasonably excluded under the STA.

### B. Sixth Amendment

The Sixth Amendment guarantees defendants in all criminal prosecutions the right to a speedy and public trial; however, it is "impossible to determine with precision when the right has been denied." *Barker v. Wingo*, 407 U.S. 514, 521 (1972). We balance four factors in making this determination: (1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *United States v. Black*, 830 F.3d 1099, 1111 (10th Cir. 2016).

"The threshold factor to consider is the length of the delay. We need only inquire into the other factors if the period of delay is presumptively prejudicial." *United States v. Lugo*, 170 F.3d 996, 1002 (10th Cir. 1999) (quotation marks and citation omitted); *see also Medina*, 918 F.3d at 780 (10th Cir. 2019) ("Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay") (brackets and

9

citation omitted).

> While we have observed that there is no bright line beyond which pretrial delay will trigger a *Barker* analysis, we are also cognizant of the Supreme Court's observation in *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L.Ed.2d 520 (1992), that depending on the nature of the charges, the lower courts have generally found postaccusation delay presumptively prejudicial at least as it approaches one year.

*United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995). "[T]he length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530–31.

In this circuit, the threshold essentially rests at the one-year mark itself. *See, e.g.*, *United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) (reasoning that a delay of fourteen months, but not eleven, "might qualify as presumptively prejudicial"); *United States v. Nixon*, 919 F.3d 1265, 1269 (10th Cir. 2019) ("Because this period *exceeded* one year, it created a presumption of prejudice, triggering further scrutiny.") (emphasis added); *United States v. Banks*, 761 F.3d 1163, 1183 (10th Cir. 2014) (referencing the "presumption of prejudice that attaches to delays *greater than* one year") (emphasis added); *Margheim*, 770 F.3d at 1326 (referencing "the *bare minimum [of a year]* needed to trigger judicial examination") (citation omitted, alteration in original, emphasis added); *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010) ("[T]he length of the delay crossed the threshold from "ordinary" to "presumptively prejudicial" because it was *more than* a year . . .") (emphasis added). The ten- and one-half-month

10

delay at issue here does not meet this threshold of presumptive prejudice, particularly

considering the nature of the charges: a conspiracy, which entitles toleration of longer

delay.  Because we hold that the delay is not presumptively prejudicial, we need not

inquire into the other factors.

## III.

## JURY INSTRUCTIONS

"This court reviews the district court's refusal to give a proposed instruction for

abuse of discretion, but considers *de novo* whether the jury instructions, as a whole,

correctly state the law."  *Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d

1251, 1256 (10th Cir. 2016).

Mr. Cortes-Gomez requested a very particular jury instruction which emphasized

that an accomplice who testifies "has a motive to falsify or exaggerate his or her

testimony against the defendant."  Rec., Vol. I at 194.  He argues on appeal that because

this instruction was refused, the jury here was not properly instructed.  We disagree.

The instruction the district court actually gave here followed this court's pattern

instruction[5] and satisfied our rule requiring otherwise uncorroborated accomplice

---

[5] The pattern instructions are prepared by the Criminal Pattern Jury Instruction Committee of this court and were most recently updated in February 2018.  The Judicial Council of the Tenth Circuit has authorized distribution of these instructions to the District Judges for their aid and assistance; however, "this resolution shall not be construed as an adjudicative approval of the content of such instructions, which must await case-by-case review by the Court."  Judicial Council of the Tenth Circuit Resolution, September 1, 2005.

testimony to be accompanied by proper cautionary instructions. *See* Tenth Circuit Criminal Pattern Jury Instruction § 1.14; *United States v. Owens*, 460 F.2d 268, 269 (10th Cir. 1972) ("The rule is established in this Circuit, however, that the court must instruct the jury that testimony of accomplices must be carefully scrutinized, weighed with great care, and received with caution."); Aple. Br. at 46 (the jury instruction given by the district court advised "[y]ou should receive [testimony from an accomplice] with caution and weigh it with great care."). In contrast to the cases cited by Mr. Cortes-Gomez, the jury here was given a specific cautionary instruction regarding accomplice testimony *in addition to* an instruction regarding witness credibility generally. *Compare* Rec., Vol. I at 237 (cautionary accomplice instruction) *and* 241 (witness credibility instruction) *with United States v. Hill*, 627 F.2d 1052, 1054 (10th Cir. 1980) (instruction regarding witness credibility in general was insufficient when accomplice testimony was uncorroborated; proper cautionary instruction required) *and Owens*, 460 F.2d at 269 (conviction based on uncorroborated accomplice testimony without cautionary instruction was plain error). The district court did not err in holding that this instruction "sufficiently communicated that the jury should receive and consider accomplice testimony cautiously." Rec., Vol. I at 453.

## IV.

## SENTENCING ENHANCEMENTS

"When reviewing the district court's calculation of the guidelines, we review legal questions *de novo* and factual findings for clear error, giving due deference to the district

court's application of the guidelines to the facts." *United States v. Halliday*, 665 F.3d 1219, 1222–23 (10th Cir. 2011) (quotation marks and citation omitted). Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made. *Zar*, 790 F.3d at 1046.

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985).

### A. Aggravating Role Adjustment

Mr. Cortes-Gomez appeals the application of a four-point enhancement based on his role as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). He need only have managed or supervised *one* of his co-conspirators to qualify for this enhancement. *Id.* cmt. n.2.

The district court found that this conspiracy included at least five participants, that Mr. Cortes-Gomez explicitly recruited and directed at least one of the other participants, and that he "was situated at the upper end, or at least the upper ends, of a vertically integrated drug-trafficking organization." Rec., Vol. III at 40. Even Mr. Cortes-Gomez acknowledges on appeal that "there was testimony that [he] directed [Ms.] Morales to perform certain actions." Aplt. Br. at 53. The district court's factual findings are

13

supported by the record and this enhancement was therefore properly applied.

### B. Criminal Livelihood Enhancement

The district court also overruled Mr. Cortes-Gomez's objection to the PSR's two-level enhancement for committing the offense as "part of a pattern of criminal conduct" that he was "engaged in as a livelihood." U.S.S.G. §§ 2D1.1. A "pattern of criminal conduct" is defined as "planned criminal acts occurring over a substantial period of time." U.S.S.G. § 4B1.3 cmt. n.1. Such conduct is considered "engaged in as a livelihood" if (i) income derived from the criminal activity in any twelve-month period exceeded 2,000 times the then existing minimum wage, and (ii) the totality of the circumstances indicates the criminal conduct was the defendant's primary occupation in that twelve-month period. *Id.* cmt. n.2.

Mr. Cortes-Gomez's only argument on appeal, with no case law cited as support, is that the district court erred in relying on "inconsistent" accomplice testimony to find that Mr. Cortes-Gomez's pattern of criminal conduct was "what [he] did for his living." Aplt. Br. at 55, 54. He presents his own and Ms. Morales's testimony that he had other employment as contradicting and thereby invalidating this finding. Yet the district court expressly considered and rejected this testimony regarding his other employment, finding it not credible "in light of the testimony to the contrary." Rec., Vol. III at 48. "Our deference to the district court is especially appropriate when the issue concerns questions of a witness credibility." *United States v. Litchfield*, 959 F.2d 1514, 1523 (10th Cir. 1992).

The record contains sufficient support for the district court's findings. This includes Ms. Garcia's testimony that she never knew Mr. Cortes-Gomez to have any other employment during the multi-year period they were living together in a romantic relationship, Rec., Vol. I at 325, Trial Transcript at 643–644, and Ms. Morales's testimony that Mr. Cortes-Gomez passed approximately $300,000 in drug proceeds through her bank account, *see id.*, Vol. III at 22. The district court's factual findings are a permissible view of the evidence, and Mr. Cortes-Gomez's alternative reading does not render them clearly erroneous. *See Anderson,* 470 U.S. at 574.

For all the foregoing reasons, we AFFIRM.