**FILED**
**United States Court of Appeals**
**Tenth Circuit**

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**May 5, 2026**

_____

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANTHONY STEVEN PRICE,

    Defendant - Appellant.

Nos. 25-5144 & 25-5146
(D.C. Nos. 4:24-CR-00254-GKF-1 &
4:18-CR-00020-GKF-1)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **McHUGH**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

Anthony Steven Price appeals the revocation of his supervised release, arguing the district court erred in finding that he had violated the terms of his supervised release conditions by committing a new crime and possessing a dangerous weapon. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.  Background

In 2018, Mr. Price pleaded guilty to Hobbs Act robbery and being a felon in possession of a firearm.  He was sentenced to 87 months in prison and three years of supervised release.  While serving that sentence, he fled from custody and later pleaded guilty to an escape charge.  He was then sentenced to ten months in prison, to run concurrently with his original sentence, followed by three years of supervised release.  He was released from federal custody in May 2025 upon the completion of his sentence.

On July 20, 2025, Mr. Price was at the home of his mother-in-law in Muskogee, Oklahoma.  According to a police report, Mr. Price's wife Tiffany began fighting with her daughter's boyfriend.  Mr. Price then entered the room with an object in his hand and began striking the boyfriend repeatedly.  The boyfriend told police he did not know what object Mr. Price had used to hit him, but Tiffany's daughter said it was a small novelty baseball bat.  The officer at the scene reported the boyfriend had blood on his face, arms, and shirt, and that he suffered a dislocated shoulder and a deep gash on his head for which he received treatment at an emergency room.

The daughter called the police, and Tiffany was arrested at the scene.  Mr. Price fled before police arrived but was arrested two days later.  He was later charged with assault and battery with a dangerous weapon.

A few days after the incident, Mr. Price's probation officer, Bethany Blackmon, prepared petitions seeking to revoke Mr. Price's supervised release in both the underlying robbery case and the escape case.  The petitions alleged eight

2

violations, and Mr. Price stipulated to having committed three of them. On the remaining alleged violations, including committing another crime and possessing a dangerous weapon, the district court received into evidence the police report concerning the July 20 incident and heard testimony from three witnesses.

Officer Blackmon testified about the assault, relying on the police report and conversations she had with one of the charging officers and a member of Tiffany's family who was at the scene. She acknowledged there was some uncertainty about the object Mr. Price had in his hand—the family member she spoke with thought it was brass knuckles—but whatever it was, she noted it was enough to cause a gash in the victim's head, requiring an emergency room visit. Mr. Price did not object to Officer Blackmon's testimony or the police report.

Mr. Price offered his own testimony as well as the testimony of his mother-in-law. While Mr. Price admitted to fighting, he denied he struck the boyfriend with anything other than his fists. His mother-in-law also testified she saw no object in Mr. Price's hand. Both denied seeing any blood on the boyfriend after the fight.

The district court found, by a preponderance of the evidence, that Mr. Price had committed all the contested violations. It revoked Mr. Price's terms of supervised release and sentenced him to 18 months in prison relating to the underlying robbery conviction and 21 months in prison relating to the escape conviction, to be served concurrently.[1] As to the assault allegations, the district court

---

[1] Mr. Price separately appealed the revocation of supervised release in each case (Nos. 25-5144 and 25-5146). The court has consolidated the appeals for all procedural purposes.

credited the police report and found (1) that Mr. Price had committed an assault, and (2) relatedly, was in possession of a dangerous weapon because the object he used to beat the victim caused a deep gash to the victim's head. On appeal, Mr. Price seeks to challenge only these two findings.

## II. Discussion

To revoke a term of supervised release, the district court must find by a preponderance of the evidence that the defendant violated a condition of his release. 18 U.S.C. § 3583(e)(3). We review a district court's decision to revoke a term of supervised release for abuse of discretion. *United States v. Disney*, 253 F.3d 1211, 1213 (10th Cir. 2001). "A district court abuses its discretion when it relies on an incorrect conclusion of law or a clearly erroneous finding of fact." *United States v. Battle*, 706 F.3d 1313, 1317 (10th Cir. 2013). "Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made." *United States v. Cortes-Gomez*, 926 F.3d 699, 708 (10th Cir. 2019).

Mr. Price argues there was insufficient evidence that he committed the crime of assault and battery and possessed a dangerous weapon. We disagree. The question is whether the district court's findings were "without factual support in the record," *id.*, and it is indisputable that its findings were supported by the police report. In addition, Officer Blackmon's testimony was based not only on the police report, but also on a conversation with one of the charging officers and another family member who was at the scene. Although Mr. Price testified he had nothing in his hand as he punched the victim, and both he and his mother-in-law testified they

saw no blood on the victim after the incident, the district court determined their testimony lacked credibility. It is "within the district court's province as the fact-finder" to determine witness credibility. *United States v. Rodebaugh*, 798 F.3d 1281, 1290 (10th Cir. 2015) (internal quotation marks omitted). We discern no error in the district court's weighing of the evidence.

Notwithstanding that there was evidence to support the district court's findings, Mr. Price argues that the revocation cannot be based on hearsay evidence alone. We reject this argument as well. First, "[a]t revocation hearings courts have the flexibility to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *United States v. Williams*, 106 F.4th 1040, 1045 (10th Cir. 2024) (internal quotation marks omitted).

Second, the argument is subject to a plain error analysis because Mr. Price did not object to the hearsay nature of the evidence or assert his right to confront the declarants.[2] *See United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012). Rule 32.1(b)(2)(C) of the Federal Rules of Criminal Procedure provides that at a final revocation hearing, a person "is entitled to . . . an opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." The advisory committee's notes further explain that Rule 32.1 requires the court to "apply a balancing test at the hearing itself when considering the releasee's asserted right to cross-examine adverse witnesses" and

---

[2] The one case Mr. Price cited in support of his argument—an unpublished decision of the Eleventh Circuit—is distinguishable because unlike Mr. Price, the defendant in that case preserved the issue. *United States v. Body*, 791 F. App'x 807, 809 (11th Cir. 2019).

"balance the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it." Fed. R. Crim. P. 32.1 advisory committee's note to 2002 amendments. This balancing test "governs whether hearsay evidence may be used to revoke supervised release." *United States v. Jones*, 818 F.3d 1091, 1098 (10th Cir. 2016). Mr. Price, however, did not invoke Rule 32.1 or otherwise assert the right to cross-examine the hearsay declarants, and this court has never held that a district court must sua sponte conduct a Rule 32.1(b)(2)(C) balancing test before accepting hearsay statements. Thus, even if the district court erred, it was not plain. *See United States v. Hernandez*, 104 F.4th 755, 767 (10th Cir. 2024) (an error is plain if it "is clear or obvious under current law").

### III.  Conclusion

We affirm the judgment of the district court revoking supervised release in both the underlying robbery conviction and the escape conviction.

Entered for the Court


Bobby R. Baldock
Circuit Judge

6