**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DHRUV JANI,

    Defendant - Appellant.

No. 23-1309
(D.C. No. 1:22-CR-00202-RM-1)
(D. Colo.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **TYMKOVICH**, **BALDOCK**, and **EID**, Circuit Judges.

_____

Defendant, Dhruv Jani, pleaded guilty to Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(a)(1)(B)(i), (h). The conspiracy involved laundering the proceeds from a government official imposter scheme originating in India. Based on Defendant's role in the offense, a Presentence Investigation Report (PSR) recommended adding an aggravating role enhancement to Defendant's base offense level pursuant to U.S.S.G. § 3B1.1 (2021). The district court substantially agreed and calculated Defendant's guideline range as 78 to 97 months. Ultimately, the court varied upward and sentenced Defendant to 120 months' imprisonment. Defendant now

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appeals, arguing the district court improperly calculated his guideline range by applying the enhancement. We exercise jurisdiction under 18 U.S.C. § 3742 and affirm.

## I.

The underlying facts of the conspiracy, which Defendant does not challenge on appeal, are as follows. Callers impersonating United States government officials deceived victims into believing they were under investigation. The impersonators convinced victims to ship large sums of money to alleged government officials to avoid arrest or deportation. "Runners" would then pick up the packages of cash using fake IDs. They would purchase money orders with the cash and deposit the money orders into third-party accounts. Defendant, a citizen of India, was a runner in the scheme. He operated out of Wray, Colorado, residing in the United States on a nonimmigrant visa. Defendant received instructions from a contact in India, Mike, in the Gujarati language. Mike told Defendant where and when to expect packages of cash and what to do with the cash once he received it.

In turn, Defendant gave orders to two other runners he personally recruited to join the scheme, James Witte and Jason Henderson, both United States citizens. Defendant served as the primary point of contact between Mike and Defendant's recruits. Defendant equipped Witte and Henderson with fake IDs to use when picking up packages of cash. He told Witte and Henderson where to go and when, working with either Witte or Henderson one at a time. Defendant drove Henderson to pick up and drop off packages and to purchase money orders. Defendant also paid Witte and

Henderson using the cash received from defrauded victims. Additionally, Defendant travelled from Colorado to California with Witte to deliver a sum of cash. Throughout the conspiracy, Defendant told Witte and Henderson to delete their text messages and not to talk to law enforcement. Following Witte's arrest, Defendant told Witte that Defendant and Mike had arranged a lawyer for him.

Prior to sentencing, the Probation Office prepared a PSR. Relevant here, the PSR recommended enhancing Defendant's base offense level by two levels under U.S.S.G. § 3B1.1(c) because Defendant was an "organizer, leader, manager or supervisor" in the conspiracy. Defendant objected to the PSR and argued no role adjustment pursuant to § 3B1.1 should apply. Defendant argued he merely translated orders given by Mike, so he did not manage or supervise a subordinate. Specifically, Defendant argued he lacked "decision-making authority, control, or the ability to organize money laundering activities as he saw fit" in his translator role.

At sentencing, the district court pivoted from the PSR's recommendation to enhance Defendant's sentence under § 3B1.1(c), enhancing Defendant's sentence under § 3B1.1(b) instead.[1] Notably, the district court reasoned Defendant was a manager or supervisor under subsection (b), even assuming Defendant lacked discretion and merely "hand[ed] down things that Mike [told] him." The court drew

---

[1] Unlike subsection (c), subsections (a) and (b) apply where the criminal activity "involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a), (b). Subsection (a) applies a four-level enhancement to a Defendant's base offense level where a defendant was "an organizer or leader." *Id.* § 3B1.1(a). Subsection (b) applies a three-level enhancement where "the defendant was a manager or supervisor." *Id.* § 3B1.1(b).

an analogy to the military: "The lieutenant tells the sergeant, 'You guys go take that hill.'  The sergeant tells the privates, 'Men, we're going to charge that hill.'  He is still managing and supervising those people."  The court explained:

> I don't care whether he is following orders up the chain.  With respect to these individuals, he's organizing them, he's managing them, he's supervising them.  And the fact that maybe he doesn't run the call center or have the discretion, which is a fact that the Government would disagree with, but I don't need to get into that, push it all to the side, at the end of the day, where we are is that he recruited them, Witte and Henderson.  He instruct[ed] them as to where to go.  He obtain[ed] identification for them.  He travel[ed] to California with one of them.

The court concluded, "I can't even process why I would find him to be anything other than a manager or supervisor."

## II.

"Section 3B1.1 of the Sentencing Guidelines allows a district court to enhance a defendant's sentence for his aggravating role in the underlying offense."  *United States v. Hunsaker*, 65 F.4th 1223, 1227 (10th Cir. 2023).  Section § 3B1.1(b) provides for a three-level enhancement to a defendant's base offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(b).  "[T]o qualify for an adjustment under this section, 'the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants' in the underlying offense." *Hunsaker*, 65 F. 4th at 1227 (quoting U.S.S.G. § 3B1.1 cmt. n.2.).  In addition, Application Note Four to Section 3B1.1 provides seven factors we have

deemed relevant to a district court's determination of whether a defendant is a manager or supervisor under subsection (b):

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

Notably, we have "consistently interpreted the 'manager/supervisor' role as one requiring the defendant to exercise some degree of 'decision-making authority,' 'control,' or 'organizational authority' over a subordinate participant in the offense." *United States v. Zar*, 790 F.3d 1036, 1058 (10th Cir. 2015). We have not parsed distinctions between "decision-making authority," "control," or "organizational authority." But our precedents make clear that the terms "manager" and "supervisor" "suggest an element of control over others" and require "the presence of underlings in the endeavor." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1271 (10th Cir. 1997). Indeed, the term "supervisor" is "satisfied upon a showing that the defendant exercised *any* degree of direction or control over someone subordinate to him." *United States v. Lozano*, 921 F.3d 942, 948 (10th Cir. 2019) (quoting *United States v. Backas*, 901 F.2d 1528, 1530 (10th Cir. 1990)).[2]

---

[2] Two cases help illustrate when a § 3B1.1(b) enhancement applies. In *Hunsaker*, the defendant maintained a close relationship with the leader of a drug trafficking organization, possessed heightened knowledge of the conspiracy, and paid drug sources on the leader's behalf. 65 F.4th at 1230. We concluded the Government presented no facts evidencing "decision-making authority or control over a subordinate." *Id.* Thus, insufficient evidence supported a § 3B1.1(b) enhancement. *Id.* 1230–31. By comparison, in *Zar*, sufficient evidence supported a § 3B1.1(b)

III.

On appeal, Defendant raises two arguments. First, Defendant argues the district court applied the wrong legal standard in determining Defendant acted as a manager or supervisor under § 3B1.1(b). Specifically, Defendant argues the district court ignored our required showing that Defendant possessed decision-making authority or control over a subordinate. Second, Defendant argues the facts found by the district court are insufficient to support the enhancement under a proper standard. We address each argument in turn.

A.

At the outset, the parties dispute our standard of review applicable to Defendant's first argument. The Government contends Defendant failed to preserve his first argument for appeal, so we review it, if at all, for plain error. But Defendant argues we review for clear error. To "avoid plain error review on appeal of any alleged procedural flaw," a defendant must "contemporaneously object in the district court to the method by which the district court arrived at a sentence." *United States v. Wireman*, 849 F.3d 956, 961 (10th Cir. 2017) (internal quotations omitted). Here, Defendant failed to argue the district court applied the wrong legal standard prior to this appeal. Defendant points to his objection to the PSR, but Defendant did not argue the district court applied the wrong legal test in his objection to the PSR. *See United States v. Yurek*, 925 F.3d 423, 444 (10th Cir. 2019) (observing that objecting to the

enhancement where the defendant recruited others to a mortgage fraud scheme, directed and advised them, and introduced them to an accomplice. 790 F.3d at 1058.

presentence report would not have alerted the district court to an error in the court's explanation).  Nor did Defendant notify the district court of Defendant's objection at sentencing.  Thus, Defendant did not preserve his first argument.[3]

Moreover, Defendant did not argue plain error in his opening brief.  Generally, we "do not consider arguments made for the first time on appeal in an appellant's reply brief," but we retain the discretion to do so.  *United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019).  For example, in *Yurek*, the defendant "appeared to assume in her opening brief that she had preserved her challenge," and "[a]fter the government challenged preservation," she argued plain error in her reply brief.  925 F.3d at 445.  Exercising our discretion, we reviewed the defendant's appeal for plain error.  *Id.*  Here, as in *Yurek*, Defendant appears to assume in his opening brief that he preserved his challenge.  Even after the government challenged preservation, Defendant maintained he preserved his argument.  Defendant also argued plain error in his reply brief.  Giving Defendant the benefit of a doubt, we exercise our discretion in this instance to review for plain error.  To show plain error, Defendant must establish "(1) error, (2) that is plain, (3) which affects the party's substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Venjohn*, 104 F.4th 179, 183 (10th Cir. 2024).

---

[3] This case is distinguishable from *United States v. Lopez-Avila*, where the district court ruled on the precise issue raised on appeal, so we did not require a contemporaneous objection.  665 F.3d 1216, 1217–18 (10th Cir. 2011).

Turning to the merits, we conclude the district court applied the correct legal standard when it applied a § 3B1.1(b) enhancement, so the court did not err, much less plainly err.  Defendant is quite correct that some degree of decision-making authority or control over a subordinate is required to support a § 3B1.1(b) sentence enhancement under our precedent.  *See, e.g., Hunsaker*, 65 F.4th at 1229.  But we cannot agree that the district court set aside this necessary inquiry at sentencing.  Specifically, Defendant argues that the district court erred by failing to consider whether Defendant exercised discretion or whether Defendant simply passed orders down from Mike.  Defendant argues that by doing so, the district court also set aside the question of control.  But whether Defendant had control is a separate question from whether Defendant had discretion, and we have never held discretion *and* control are required to find a defendant a manager or supervisor under § 3B1.1(b).  Instead, "direction or control over someone subordinate" is sufficient.  *Lozano*, 921 F.3d at 948 (quoting *Backas*, 901 F.2d at 1530).

The record shows the district court considered control.  The court compared Defendant to a military sergeant.  The court stated: "The lieutenant tells the sergeant, 'You guys go take that hill.'  The sergeant tells the privates, 'Men, we're going to charge that hill.'"  While a sergeant may take orders from a lieutenant, a sergeant is a supervisor nonetheless, so long as the sergeant orders subordinates.  *See id.*  In short, the district court's analogy identified the salient rule for application of a § 3B1.1(b) enhancement.  By comparing Defendant to a military sergeant, the court signaled consideration of Defendant's organizational authority and control over a subordinate.

8

Consequently, we cannot conclude on the record that the district court applied the wrong legal standard.[4]

## B.

Defendant next argues, "[t]he facts found by the district court, furthermore, were insufficient to support application of the enhancement under the proper standard." To the extent Defendant challenges the sufficiency of the evidence supporting a § 3B1.1(b) enhancement, Defendant preserved his argument by raising it in his objection to the PSR. "We review a district court's finding that a defendant is a manager or supervisor under § 3B1.1(b) for clear error." *Zar*, 790 F.3d at 1056. "Factual findings are clearly erroneous only if they are without factual support in the record or if this court, considering all the evidence, is left with a definite and firm conviction that a mistake has been made." *Lozano*, 921 F.3d at 946. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may

---

[4] Defendant also argues four facts cited by the district court in support of the § 3B1.1(b) enhancement fail to show Defendant exercised control over a subordinate, so the district court failed to consider control. Defendant's argument rests on the false premise that the district court did not consider control. But the district court identified the applicable legal standard in its military analogy, and the court's factual observations are consistent with the court's analogy. The district court observed, Defendant "recruited them, Witte and Henderson. He instruct[ed] them as to where to go. He obtain[ed] identification for them. He travel[ed] to California with one of them." Even Defendant admits, "each of these activities *could* be conducted by an individual possessing the decision-making authority or control required to qualify as a manager or supervisor under U.S.S.G. § 3B1.1(b)." In other words, the district court's factual observations are not in tension with control, so they do not show the court set aside the applicable legal standard. To the contrary and as discussed below, Defendant's instruction and recruitment of Witte and Henderson sufficiently support the inference that Defendant exercised control over a subordinate. *See infra* Part B.

not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74 (1985)).

Here, the record does not leave us with a definite and firm conviction that the district court made a mistake.  At Mike's behest, Defendant directed Witte and Henderson's participation in the conspiracy.  Defendant told Witte and Henderson where to pick up packages and when to do so.  Defendant also told Witte and Henderson to delete their text messages.  Defendant's instructions sufficiently support the inference that Defendant exercised some "degree of direction or control over someone subordinate to him." *See id.* at 948 (quoting *Backas*, 901 F.2d at 1530).

We also observe Defendant recruited Witte and Henderson to the scheme. Defendant argues recruitment does not show decision-making authority or control, so it does not support a § 3B1.1(b) enhancement.  Application Note Four to § 3B1.1 and our precedent suggest otherwise.  Again, the factors listed in Application Note Four to § 3B1.1 are relevant to the manager or supervisor inquiry. *See United States v. Aptt*, 354 F.3d 1269, 1286 (10th Cir. 2004).  Recruitment is such a factor.  U.S.S.G. § 3B1.1 cmt. n.4; *see also Zar*, 790 F.3d at 1058 (considering recruitment as a factor supporting a § 3B1.1(b) enhancement).  Thus, Defendant's recruitment of Witte and Henderson is a factor additionally supporting the district court's finding that Defendant managed or supervised Witte and Henderson.[5]

---

[5] Several of our Sister Circuits have held recruitment alone is sufficient to support a § 3B1.1 enhancement. *See United States v. Heard*, 91 F.4th 1275, 1279 (8th

10

Finally, we cannot overlook that Defendant served as the boots on the ground for the three conspirators in Colorado. He was not only the voice of the conspiracy's leadership, but their hands and feet. He equipped Witte and Henderson with fake IDs. He paid Witte and Henderson. He drove Henderson to pick up and drop off packages and to purchase money orders. In addition, when Witte was arrested, Defendant told Witte that Defendant and Mike had arranged an attorney for Witte, not that Mike alone had done so. These activities, in totality, lend credence to the district court's finding that Defendant managed or supervised Witte and Henderson. The district court did not clearly err in finding these facts warranted an adjustment to Defendant's base offense level under the proper legal standard pursuant to U.S.S.G. § 3B1.1(b).

For the forgoing reasons, we AFFIRM Defendant's sentence.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

Cir. 2024); *United States v. Castilla-Lugo*, 699 F.3d 454, 460–61 (6th Cir. 2012) ("recruiting co-conspirators and planning and organizing their entrance into the conspiracy suffices to warrant the [§ 3B1.1(b)] enhancement"); *United States v. Savarese*, 686 F.3d 1, 20 (1st Cir. 2012) (explaining recruitment reflects, "the demonstration of individual authority necessary to bring a new member into the fold," where a district court enhanced a defendant's sentence under U.S.S.G. § 3B1.1(c)). We need not decide whether recruitment alone adequately supports an inference of decision-making authority or control in this case because Defendant also instructed Witte and Henderson.

11